455 P.2d 453

STATE of Arizona, Appellee,

v.

Melvin Larry LITTLE, Appellant.

No. 1896.

Supreme Court of Arizona.

In Division.

June 11, 1969.

Rehearing Denied July 15, 1969.

Gary K. Nelson, Atty. Gen., by Thomas M. Tuggle, Asst. Atty. Gen., for appellee.

Vernon B. Croaff, Public Defender, by Anne Kappes, Deputy Public Defender, for appellant.

McFARLAND, Justice.

Melvin Larry Little, hereinafter referred to as the defendant, was adjudged guilty of the crime of grand theft with a prior conviction and sentenced to a term of not less than ten nor more than fifteen years in the Arizona State Prison; from his conviction and sentence he appeals.

The facts briefly stated are that on April 21, 1967, defendant stole seven tires valued at more than $100 from a Goodyear Retread Plant located in Phoenix, Arizona. Defendant was thereafter informed against for the crime of grand theft; the charging part of the information reads:

"MELVIN LARRY LITTLE is accused this 19th day of June, 1967, by the County Attorney of Maricopa County, State of Arizona, by this information, of the crime of GRAND THEFT, A FELONY committed as follows, to-wit:

"The said MELVIN LARRY LITTLE on or about the 21st day of April, 1967,

and before the filing of this information at and in the County of Maricopa, State of Arizona, stole from GOODYEAR RETREAD PLANT, Goodyear tires of the value of more than $100.00; all in violation of Sections 13–138, 13–139, 13–140, 13–661, and 13–663, A.R.S., as amended, 1963;"

The trial proceedings, which were held on July 25, 1967, began as follows:

"THE COURT: State·of Arizona vs. Melvin Larry Little, Defendant.

"Is the State ready?

"MR. WAMACKS: The State is ready, your Honor.

"THE COURT: Is the defendant ready?

"MRS. BAILEY: The defendant is ready, your Honor, and the defendant has just informed me that he desires to waive his right to jury trial and have the issues tried by the Court.

"THE COURT: Is that your wish, Mr. Little, in the matter, to waive your right to a jury trial and submit the matter to the Court?

"MR. LITTLE: Yes, sir.

"THE COURT: Then there will be an order granting motion of defendant to waive the jury."

Mr. Wamacks from the County Attorney's Office was present for the State, and Mrs. Bailey from the Public Defender's Office was present for the defendant.

Defendant's first contention is that he did not make an express and intelligent waiver of his right to a jury trial. The Constitution of the State of Arizona, Article VI, Section 17, A.R.S., reads in part as follows:

"* * * for the trial of criminal causes, a trial jury shall be drawn and summoned from the body of the county, as provided by law. The right of jury trial as provided by this constitution shall remain inviolate, but *trial by jury may be waived* * * * *by the parties with the consent of the court in any criminal cause.*" [Emphasis added.]

As defendant correctly states in his brief, a waiver is valid only if made with the "express and intelligent consent of the defendant." Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854. However, in an opinion written by Mr. Justice Frankfurter, the United States Supreme Court recognized that the defendant has the burden of showing essential unfairness, and that the burden is to be sustained not as a matter of speculation but as a demonstrable realty. Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268. The following statement appears in the opinion at page 242, 63 S.Ct.:

"* * * Simply because a result that was insistently invited, namely, a verdict by a court without a jury, disappointed the hopes of the accused, ought not to be sufficient for rejecting it."

It should be noted that although the waiver in the Adams case was made without the aid of counsel, the Supreme Court was unable to find that defendant's right to a jury trial was not intelligently waived.

Citing Adams v. United States, supra, the Court of Appeals of the District of Columbia circuit held as follows, in Hatcher v. United States, 122 U.S.App.D.C. 148, 352 F.2d 364:

"* * * it appears that appellant signed a form of waiver in open court in the presence of his counsel, who signed the waiver with him. It is true that the record does not disclose direct communication between the court and the appellant with respect to the waiver. Since the waiver of a constitutional right is not to be taken lightly, such direct communication is desirable so there can be no question of the defendant's 'intentional relinquishment or abandonment of a known right.' [Cases cited.] *Because there is in this case no suggestion that appellant's act of waiver was not intentional or without actual knowledge of his right to a jury trial, we are constrained to affirm the judgment of the District Court.* Adams v. United States ex rel. McCann, 317 U.S. 269, 281, 63 S.Ct. 236,

87 L.Ed. 268 (1942)." [Emphasis added.]

In McCranie v. United States, 333 F.2d 307, a decision of the Court of Appeals (Fifth Circuit), the appellant complained that his express waiver of a trial by jury was ineffective because the District Judge failed to advise him sufficiently of his right to a jury. The Court, in affirming the conviction, stated:

"The questions propounded by the District Judge to Appellant speak in the plainest of language of waiver of Appellant's *right* to a jury trial. The words could not have been any clearer, and there is no showing that Appellant, an intelligent man aided by his retained counsel, had any doubts about his absolute right to a jury trial."

■ The extent to which the trial judge discusses the matter with the defendant before accepting the express waiver is one of the circumstances to be considered in determining whether a valid waiver has been made.

"* * * And whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case * * *." Adams v. United States, supra

■ The court's question to the defendant in the instant case was clear and understandable, and the defendant had the assistance of counsel at the time of his waiver. Neither has the defendant presented us with any evidence that his express decision was not the result of a free and intelligent choice on his part, nor have we been able to find any evidence in the record before us that the defendant did not make an intelligent and competent waiver of his right to a jury trial. We therefore hold that there was a valid waiver.

Defendant's next contention is that the information is fatally defective in that it does not describe the property alleged to be stolen with sufficient particularity to support a conviction.

Rule 114, Rules of Crim.Proc., 17 A.R.S., provides the proper form of an information as follows:

"Rule 114. Form of information

"The information may be in substantially the following form:

"In the (here state the name of the court) the * * * day of * * * 19 * * * The state of Arizona vs. A.B.

"X. Y. (here state the title of the county attorney) for the county of * * *, in the name of the state of Arizona, and by its authority, accuses A.B. of (here charge the offense in one of the ways mentioned in Rule 115) and charges that (here the particulars of the offense may be added with a view to avoiding the necessity for a bill of particulars)."

And Rule 115, Rules of Crim.Proc., 17 A.R.S., sets forth the various ways by which an offense may be charged:

"Rule 115. Charging the offense

"A. The indictment or information may charge, and is valid and sufficient if it charges, the offense for which the defendant is being prosecuted in one or more of the following ways:

"1. By using the name given to the offense by the common law or by a statute.

"2. By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of what offense is intended to be charged.

"B. The indictment or information may refer to a section or subsection of any statute creating the offense charged therein, and in determining the validity or sufficiency of such indictment or information regard shall be had to such reference."

■ The form suggested in Rule 114, supra, was substantially followed in the information in the instant case, and the offense of grand theft was charged both by the giving of the statutory name of the

crime and by the reference to the applicable sections of Arizona Revised Statutes. If the defendant were in doubt as to which Goodyear tires were taken from the Goodyear Retread Plant by him on the 21st day of April 1967 he should have requested such additional information as he desired pursuant to Rule 116, Rules of Crim.Proc., 17 A.R.S., which reads as follows:

"When an indictment or information charges an offense in accordance with the provisions of Rule 115, but fails to inform the defendant of the particulars of the offense sufficiently to enable him to prepare his defense, or to give him such information as he is entitled to under the constitution of this state, the court may, of its own motion, and shall, at the request of the defendant, order the county attorney to furnish a bill of particulars containing such information as may be necessary for these purposes, or the county attorney may of his own motion furnish such bill of particulars."

In State v. Benham, 58 Ariz. 129, 118 P.2d 91, we held:

"In view of the simplified forms of indictment and information under the new criminal procedure, bills of particulars assume an important place in criminal trials. What was formerly essential to allege in the indictment or information may now be supplied to a defendant in a bill of particulars.

* * * * * *

"* * * The simplified rules of procedure do not take from a defendant one whit of a meritorious defense, but those rules do not tolerate defenses that only delay or obstruct the termination of criminal cases * * *."

It is stated in State v. Gallegos, 99 Ariz. 168, 407 P.2d 752:

"The older cases prior to 1940 demanded technical formalities in an information with a view to advising a defendant of particulars which he might need so as to defend against the charge or to assert a plea of double jeopardy in the event of a subsequent prosecution * * *."

Defendant cites State v. Kuhnley, 74 Ariz. 10, 242 P.2d 843, in his brief as authority for his contention that the information here is fatally defective. In the Kuhnley case the information did not set forth the section or subsections of the statute under which the defendant was charged, nor specify from where the articles (radio, two sewing machines, saw, and two typewriters) were taken, and no identifying information was given. However, in the present case, the sections which defendant was charged with violating were set forth in the information. Also, the brand of the tires—Goodyear—is given, and the particular location of the theft is given—Goodyear Retread Plant.

In State v. Bundy, 91 Ariz. 325, 372 P.2d 329, 99 A.L.R.2d 808, this Court considered the application of Kuhnley, supra, to a case where the property was described as " 'one braille man's watch, one Hamilton ladies' watch, and one gold ring, of the value in excess of Fifty Dollars in lawful money * * *.' " We there said, "Here, in contrast to the Kuhnley case, trade names of the items which bore such were given, and the type of watch was indicated by the designation 'man's' or 'ladies'.' "

We hold that the information adequately informed the defendant of the charge against him. The above cases make it clear that the defendant's remedy in the instant case was by way of a request for a bill of particulars pursuant to Rule 116, supra.

■ Defendant argues that there was insufficient evidence introduced at the trial from which the jury could have found that the tires found in defendant's car were stolen from Goodyear Retread Plant. As we said in State v. Bearden, 99 Ariz. 1, 405 P.2d 885:

"We are only concerned with whether there is substantial evidence in support of the verdict * * * Reversible error occurs where there is a complete absence of probative facts to support the conclusion * * *."

There is sufficient evidence in the instant case to support the jury's finding of guilty.

The manager of the plant testified that he himself had conducted an inventory of the tires prior to the theft on the same day that the theft occurred, and he gave the following description of the tires which, according to his inventory, were missing after the theft:

"Q Do you know what tires were missing from the stacks?

"A There was two 6.95 x 14 Custom Power Cushion three wide, vitacord tubeless, four ply. There was three 8.25 x 14 Custom Power Cushion, polyester, two ply, and two 8.55 x 14 Custom Power Cushion, narrow wide or extra narrow wide, tubeless, eight ply rating. All these tires were seconds, factory seconds."

Officer Audsley, one of the arresting officers at the scene of the theft, testified that he took seven tires from a vehicle into which defendant was seen loading tires; his description of the allegedly stolen tires was as follows:

"A Well, there were seven tires entirely. They were all Goodyear brand, and the first three that was listed here were removed from the trunk of the vehicle, which were 6.95x14, Serial No. YF 17F56WSW tubeless. The other tire is 8.25x14, Serial No. YS 17398 BSW tubeless; 8.25 x 14, Serial No. YS 1785BBSW tubeless; and 6.95 x 14, Serial No. YF 176F34WSW tubeless; and 8.55 x 14, Serial No.—this particular tire here, the serial number was partly obliterated due to being stamped. They had a—the tires had been branded as 'second' I believe is what it was. Stamped 'second.' It had been branded over the serial numbers. What was left of the serial number is—the first three are marked off, leaving 1238 WSW tubeless. The other tire is 8.55 x 14, YF 07245WSW tubeless, and 8.25 x 14, Serial No. Y— the next number was burned off, and then K, and then the next number was also burned off, and then 8B3BSW tubeless."

Both the manager of the plant and the arresting officer independently described seven tires whose sizes were as follows: two 6.95 x 14; three 8.25 x 14; and two 8.55 x 14.

Officer Audsley further testified that on arriving at the scene of the crime, an alley behind the Goodyear Retread Plant, he saw one man passing tires to another, who in turn placed them in the trunk; and that the tires in the trunk and back seat of the car were all Goodyear brands. There was also evidence that a gate located at the rear of the plant was pulled up at the bottom and that the car containing the stolen tires was in front of the gate.

■ The next contention of defendant is that the proof was not sufficient to support the finding by the court of a prior conviction. The evidence in the case shows:

"MR. WAMACKS: The State would present the Court with the certified, authenticated copy of a prior conviction for a Melvin Little, charged with robbery within and for the State of Arizona, 1961, at the—that the State has Maurice Riter of the City of Phoenix Identification Bureau, a fingerprint expert, standing by to take the fingerprints of the defendant and to make a comparison to the prints appearing on the certified record for the purpose of identification of this defendant as being the same Melvin Little as previously convicted.

"THE COURT: This is a duly authenticated copy of the record, however."

The fingerprint expert never testified.

In State v. Pennye, 102 Ariz. 207, 427 P.2d 525, we held that when a prior conviction is alleged the State has the burden of proving beyond a reasonable doubt that the accused has in fact been convicted of the prior criminal offense. While the State presented a duly authenticated copy of the judgment of prior conviction which was marked for identification from which the court could have found that defendant had been convicted of a prior offense, it was never admitted in evidence.

Defendant also states that the record presented was not sufficient in that the name on the certified copy of the prior judgment—MELVIN LITTLE—is different from the name on the information in the instant case—MELVIN LARRY LITTLE.

In State v. McGonigle, 103 Ariz. 267, 440 P.2d 100, we held that evidence of prior convictions consisting of copies of judgments and fingerprint records and photographs of defendant was sufficient to support a finding that defendant had suffered a prior felony conviction. Specifically, the court stated:

"Merely because there were slight dissimilarities in the names of the defendants who had been previously convicted does not mean that the state has failed to carry its burden of proof, * * *

* * * * * *

"* * * the jury could easily look at the photographs and compare them with the defendants on trial * * *."

However, since the exhibit was not admitted in evidence, we must hold that, under the test of State v. Pennye, supra, a prior conviction was not proven.

The judgment of conviction of the crime of grand theft is affirmed, and the judgment of the trial court is reversed as to the finding that defendant had been convicted of a prior offense. The cause is remanded to the Superior Court of Maricopa County for proceedings not inconsistent with this opinion.

UDALL, C. J., and LOCKWOOD, V. C. J., concur.