457 P.2d 275

**STATE of Arizona, Appellee,**

v.

**Andrew LOMBARDO, Appellant.**

No. 1819.

Supreme Court of Arizona.

In Division.

July 7, 1969.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., for appellee.

Leibsohn & Goldstein, Phoenix, for appellant.

UDALL, Chief Justice:

On November 20, 1965, Andrew Lombardo and Gino Salerno stole two suits from Skomer's Men's Store located in the Park Central Shopping Center, Phoenix. The suits were valued in excess of $100.00. The theft was witnessed by Helen Lipnick, a security officer for Goldwater's Department Store, and Patrick O'Keefe, a security officer for Diamond's Department Store. Lombardo was followed from Skomer's by Lipnick and O'Keefe and arrested in the parking lot with the two suits in his possession. Salerno was picked up later in another part of the center. The two men were jointly tried for grand theft and found guilty by a jury.

The information filed against Lombardo and Salerno charged that:

"* * * ANDREW LOMBARDO AND GINO SALERNO on or about the 20th day of November, 1965, * * *, stole from SKOMER'S two mens suits of the value of more than $100.00, all in violation of Sections 13–661, 13–663, as amended 1963, 13–138, 13–139, and 13–140, A.R.S.;"

It is contended that the above information did not charge a public offense so as to confer jurisdiction upon the court.

Specifically, Lombardo's contention concerns the sufficiency of the description of the stolen property in the information. It is our view that the property was sufficiently described. In State v. Little, 104 Ariz. 479, 455 P.2d 453 (filed June 11, 1969), we ruled that the information was not defective where it charged defendant with stealing "from GOODYEAR RE-TREAD PLANT, Goodyear tires of the value of more than $100.00; * * *." As in the Little case, Lombardo's remedy was by way of a request for a bill of particulars pursuant to Rule 116, Arizona Rules of Criminal Procedure, 17 A.R.S. See also, State v. Terrell, 103 Ariz. 453, 445 P.2d 429 (1968). In a bill of particulars information could have been disclosed by the state concerning the color and fabric of the suits as well as the manufacturers' and brand names. That information was fully developed at trial and the record will be available to Lombardo as a bar to any subsequent action which might be filed against him for the same offense.

Lipnick testified at trial that when she arrested Lombardo in the Park Central parking lot she showed him a card which identified her as a deputy county sheriff. The evidence indicated that the sheriff's office issued the card but did not vest in Lipnick any authority to act on behalf of the department. Lipnick's work was not supervised or controlled by the sheriff's office and she received no pay from them.

Subsequent to the arrest in the parking lot Lombardo was taken by Lipnick and O'Keefe to the security office in Goldwater's and the Phoenix police were notified of the arrest. While both Lipnick and O'Keefe were present in the

security office Lombardo stated he would like to pay for the suits. The offer was refused. Lipnick then left to find Salerno. O'Keefe testified that he talked casually with Lombardo for a few minutes about experiences O'Keefe had had in New York. At some point during the conversation Lombardo pulled some money out of his pocket and stated, "I got $500, what will it cost me to get out of this?" After a hearing was conducted outside the presence of the jury, to determine the voluntariness of the statements, both Lombardo's offer to pay for the suits and his attempted bribe were admitted into evidence.

The admission of the above evidence forms the basis of Lombardo's next contention. He argues that it was improper for the court to admit any statements he made to Lipnick or O'Keefe subsequent to his arrest because he had not been advised of his rights pursuant to Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). The state argues that Miranda is not applicable because Lipnick and O'Keefe were not "law enforcement officers."

■ Both statements by Lombardo were made spontaneously, not in response to questions asked by either security guard. There is no evidence that any interrogation took place in the security office. As stated in Miranda, supra:

> "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. * * * Volunteered statements of any kind are not barred by the Fifth Amendment * * *." 384 U.S. at page 478, 86 S.Ct. at page 1630.

The trial judge admitted the statements because he felt they were of a voluntary nature and it is our opinion he did not err. See Deck v. United States, 9 Cir., 395 F.2d 89 (1968); People v. Ashford, Cal.App., 71 Cal.Rptr. 619 (1968).

Although our ruling that the statements were voluntary disposes of the issue of whether the evidence was admissible, we will discuss defendant's contention that

the security officers were required to give the Miranda warnings.

In People v. Wright, 249 Cal.App.2d 692, 57 Cal.Rptr. 781 (1967), the defendant was being detained, pending arrival of the police, by hospital security guards for burglarizing an automobile in the hospital parking lot. He was questioned by one of the guards prior to being advised of his rights and in response made incriminating statements. The appellate court ruled that the security guards were not required to give the Miranda warnings.

In State v. Hess, 9 Ariz.App. 29, 449 P. 2d 46 (1969), our Court of Appeals determined that private persons conducting a polygraph interrogation of store employees concerning several fires which had broken out in the store, did not have to give the Miranda warnings.

■ The Miranda doctrine is applicable to situations involving "custodial interrogation," or "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612. There can be no doubt Lombardo was in custody at the time the statements were made. However, Lipnick and O'Keefe were acting in a private capacity and not as law enforcement officers. They had no authority to do otherwise. It is not clear why Lipnick was in possession of a card identifying her as a deputy county sheriff. But it is clear from the record that she was not employed, supervised, controlled, or paid by any law enforcement body. The same is true for O'Keefe. We therefore hold that they were not obligated to give the Miranda warnings.

At the conclusion of the voluntariness hearing the trial judge made the following remarks:

> "There is much of a voluntary nature about what Mr. Lombardo, if that is the individual, stated in there. And I'm going through it again, so it is ordered denying the motion to suppress the conversations with the defendants as took

place between the witness O'Keefe and the witness Lipnick, is that correct?"

Defendant calls our attention to the well-settled rule which provides that at the conclusion of a voluntariness hearing the court must make a "definite determination" as to voluntariness. State v. Mileham, 100 Ariz. 402, 415 P.2d 104 (1966); State v. Goodyear, 98 Ariz. 304, 404 P.2d 397, rev'd on rehearing, 100 Ariz. 244, 413 P.2d 566 (1966). It does not appear that the court in the instant case made a "definite determination" as to voluntariness but the error was harmless. Lombardo did not contend at trial or on appeal that his statements were coerced. His contention was grounded purely on the technical grounds of the failure to give the Miranda warnings. We have ruled that the store security officers were not required to give the Miranda warnings, therefore there is no issue upon which the court could rule if we were to remand the matter for another voluntariness hearing.

 Defendant contends that the court erred in refusing to instruct the jury on shoplifting, A.R.S. 13–673. An instruction on a lesser included offense is not justified where the record is such that the defendant can only be guilty of the crime charged or no crime at all. State v. Schroeder, 95 Ariz. 255, 389 P.2d 255 (1964). The evidence is clear that the suits were taken from the store and were in Lombardo's possession when he was arrested in the parking lot. He was either guilty of theft, or of no crime at all. The court properly refused to give the defendant's requested instruction on shoplifting. See State v. Marlin, 5 Ariz.App. 524, 428 P.2d 699 (1967) where the defendant stole a camera from a store and dropped it outside the store while attempting to evade a store employee. The Court of Appeals held that a shoplifting instruction was properly refused.

The court instructed the jury on both grand and petty theft. Further, the court submitted forms of verdicts to the jury on grand theft, petty theft and not

guilty. In its general instructions on reasonable doubt the court mentioned the guilt or innocence of the defendant only as to the "crime charged in the information." Defendant contends that the instructions were confusing and inconsistent and require reversal. We cannot agree. The fact was undisputed that the two suits were valued in excess of $100. No instruction need to have been given on petty theft as there was no evidence upon which the jury could have found defendant guilty of that crime. In light of that fact, and reading the instructions as a whole, we do not find them confusing or misleading.

Affirmed.

HAYS and STRUCKMEYER, JJ., concur.