604 P.2d 644

**In the Matter of the APPEAL, IN MARICOPA COUNTY JUVENILE NO. J–86509.**

**No. 1 CA–JUV 83.**

Court of Appeals of Arizona,
Division 1,
Department A.

May 8, 1979.

Review Granted June 12, 1979.

Charles F. Hyder, County Atty., by Laura J. Houseworth, Deputy County Atty., Phoenix, for the State of Arizona.

Atmore Baggot, Phoenix, for appellant juvenile.

OPINION

WREN, Presiding Judge.

This appeal challenges as unconstitutional Arizona's indeterminate sentencing scheme for juveniles. Appellant juvenile urges that her commitment to the State Department of Corrections for a term potentially longer than the maximum jail term which might have been imposed for the same offense if committed by a person 18 years of age or older violated her equal protection rights under the United States Constitution. The juvenile further contends that error was committed in charging the wrong offense in the petition.

On May 11, 1978, the juvenile in this cause was adjudicated delinquent by virtue of having committed the offense of shoplifting in violation of A.R.S. § 13–673. At the dispositional hearing on September 14, 1978, the court ordered her placed in the custody of the State Department of Corrections for the term permitted by law. At that time she was 15 years of age and, under the court order, would be subject to detention for five and one-half years.

The juvenile first argues that the evidence supported a charge of completed theft in violation of A.R.S. § 13–661, rather than a charge of shoplifting under A.R.S. § 13–673, and that, therefore, State v. Lombardo, 104 Ariz. 598, 457 P.2d 275 (1969) and State v. Marlin, 5 Ariz.App. 524, 428 P.2d 699 (1967), compel a reversal of this cause. We disagree. Either charge would constitute an allegation of a "delinquent" act and be in full compliance with 17A A.R.S.

Juv.Ct. Rules of Procedure, rule 4.[1] Moreover, the cases cited by appellant are inapposite to her contention since they stand for the proposition that an instruction on a lesser included offense is not justified where the record is such that the defendant is guilty of the greater crime charged or no crime at all. As stated in *Lombardo* :

> The evidence is clear that the suits were taken from the store and were in Lombardo's possession when he was arrested in the parking lot. He was either guilty of theft, or of no crime at all. The court properly refused to give the defendant's requested instruction on shoplifting.

104 Ariz. at 601, 457 P.2d at 278.

The evidence here reflects that the juvenile had placed a pair of pants, assorted cosmetics, and a bottle of bubble bath inside a large purse and then left the store without paying for this merchandise. She was not detained until she began to walk across the store's parking lot. Under *State v. Wallen*, 114 Ariz. 355, 560 P.2d 1262 (App. 1977), an act which is punishable in different ways by different sections of the statutes may be punished by either and the State did not need to charge the greater offense.

The juvenile next argues that she cannot legally or constitutionally be subjected to incarceration for five and one-half years for having committed the offense of shoplifting. She asserts, first, that Arizona law requires that she be treated less harshly than her adult counterpart unless she is transferred to an adult court; and second, that she has been denied due process and equal protection of the law under *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and is being subjected to cruel and unusual punishment by being incarcerated for the time permitted by law. The essence of the juvenile's constitutional argument is that she would be confined for a period of time substantially longer than the maximum period of six months for an adult who is found guilty of shoplifting.

Her argument continues that Arizona's juvenile laws were conceived as a means of providing for a disposition more lenient than that provided for an adult for the same act. *State v. Superior Court of Pima County*, 7 Ariz.App. 170, 436 P.2d 948 (1968); *State v. Guerrero*, 58 Ariz. 421, 120 P.2d 798 (1942). She reasons that her incarceration could, therefore, equal that given an adult only under 17A A.R.S. Juv.Ct. Rules of Proc., rule 14(b), which provides for the transfer of a juvenile action for criminal prosecution as an adult. We disagree.

A.R.S. § 8–241(A)(2)(e) authorizes the juvenile court, upon a finding of delinquency, to award the child "[t]o the department of corrections without further directions as to placement by that department." A.R.S. § 8–246(A) states that a child so committed "shall be subject to the control of the department of corrections until such child's absolute discharge." A.R.S. § 8–246(B) indicates that a child committed to the department shall remain "until the child attains the age of twenty-one years unless sooner discharged by the department of corrections." The Department, therefore, has authority to determine the length of time that a juvenile may remain committed in one of its facilities. The actual time of confinement may be more or less than the term ordinarily ordered for the particular crime in question as to an adult, depending on many factors which cannot be known or anticipated. Rehabilitation provides the *quid pro quo* for a longer confinement than a defendant would undergo in an ordinary prison. Thus, the length of time that the juvenile in this cause may remain under the control of the Department of Corrections is indeterminate.

---

1. RULE 4. Contents of Petition

    (a) *Initiation of court action* shall be by a petition in writing, under oath, captioned: "In the Matter of . . . a person under the age of 18 years," and may be upon information and belief. It shall set forth plainly:

    (1) The facts, in concise language with reasonable particularity as to the time, place and manner of the alleged acts of the child and the law or standard of conduct allegedly violated by such acts, which bring the child within the jurisdiction of the court.

    .    .    .    .    .

Surprisingly, the juvenile's argument has not heretofore been the subject of Arizona appellate review. It has, however, been both accepted and rejected in other jurisdictions. In *People v. Olivas*, 17 Cal.3d 236, 131 Cal.Rptr. 55, 551 P.2d 375 (1976), the Supreme Court of California held that a juvenile misdemeanant could not constitutionally be held subject to the control of the Youth Authority for a period of time in excess of the maximum jail term which might be imposed. The California court specifically rejected the argument that the purpose of the commitment was rehabilitative and not punitive, and ruled that it was a denial of equal protection of the law for a youthful offender committed to the Youth Authority to face, for the same crime, a period of confinement potentially longer than that served by his adult counterpart.[2]

To escape the oft repeated, traditional, and now sacrosanct pronouncements by the United States Supreme Court on the doctrine of *parens patriae* and its relationship to juvenile justice sentencing procedures, the California Court in *Olivas* came up with the phrase "personal liberty interest" and noted that:

> [W]hen defining fundamental interests under the California Constitution, we exercise our inherent power as a court of last resort independent of fundamental interest determinations which may be reached by the United States Supreme Court solely on interpretations of the federal Constitution.

17 Cal.3d at 246, 131 Cal.Rptr. at 61, 551 P.2d at 381. The court justified its decision with the following observation:

> While the malleability of youth noted in *Herrera* [23 Cal.2d 206, 143 P.2d 345 (1943)] may have remained fairly constant through the intervening years, constitutional analysis has undergone considerable metamorphosis. Where once merely reasonable classifications were sufficient, the state must now show a compelling interest if fundamental rights

are affected as in the present case. It was for precisely that reason that we have chosen to reconsider the conclusion reached in *Herrera*, notwithstanding the assertion of the People that defendant's position is "clearly without merit."

17 Cal.3d at 252, 131 Cal.Rptr. at 65, 551 P.2d at 385.

We reject the reasoning and conclusion of *People v. Olivas*. The doctrine there espoused is, in our opinion, in direct contravention of the theory of juvenile rehabilitation and the historical evolvement of juvenile law in Arizona. *Olivas* represents a 180 degree turn away from the concept of *parens patriae* and rehabilitation and, so our research reflects, stands completely alone in the pronouncements of both state and federal courts. In our opinion, the concept of rehabilitation was denigrated by the *Olivas* court when it surreptitiously, and without further inquiry into the rehabilitative aspect of the youth there involved, terminated his commitment on the ground that he had already served the maximum period of incarceration which could have been imposed had he been charged as an adult.

Arguments pro and con on this issue are almost of the same vintage as the Magna Carta and the Bill of Rights, and it would serve no useful purpose to reiterate them here. Suffice it to say that the indeterminate sentence has consistently been held a salutary requirement of rehabilitation and, therefore, has withstood assault by all but the California court. That rehabilitation and a flat, determinate sentence are basically incompatible is too obvious to merit comment. How does a juvenile court judge define into a set sentence the nuances of situation, intent and social harm that go into the makeup of a 15 year old girl for the purpose of rehabilitation? We would also note that under A.R.S. § 41–1609(C) the Department of Corrections is authorized to assign a delinquent child to an appropriate institution *or training school.*

---

**2.** The youth in *Olivas* faced an institutional commitment time in excess of three years at the time of his arrest and conviction. In contrast, the maximum permissible jail term which could have been imposed on that defendant as a result of the misdemeanor conviction was six months.

The federal courts have uniformly rejected equal protection challenges to the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5026; *Cunningham v. United States*, 256 F.2d 467 (5th Cir. 1958); *Carter v. United States*, 113 U.S.App.D.C. 123, 306 F.2d 283 (D.C.Cir. 1962). These cases and their progeny have consistently held that the sentencing scheme of juvenile court is designed to aid the treatment and rehabilitation of youthful offenders.

In *Cunningham v. United States*, it was noted that the Youth Corrections Act:

> provides for and affords youthful offenders, . . ., not heavier penalties and punishment than are imposed upon adult offenders, but the opportunity to escape from the physical and psychological shocks and traumas attendant upon serving an ordinary penal sentence while obtaining the benefits of corrective treatment, looking to rehabilitation and social redemption and restoration.

256 F.2d at 472.

In *Carter v. United States*, when the Federal Act was directly challenged on equal protection grounds, Judge (now Chief Justice) Burger reaffirmed *Cunningham* and succinctly described the rationale for longer detention of juvenile offenders:

> [t]he basic theory of that Act is rehabilitative and in a sense this rehabilitation may be regarded as comprising the *quid pro quo* for a longer confinement but under different conditions and terms than a defendant would undergo in an ordinary prison. . . .

306 F.2d at 285. *Carter* held that appellant's contention respecting the time in excess of one year which he might have to remain in custodial care under the Youth Correction authorities for a crime which would otherwise have caused confinement for no more than one year must be resolved against him. *Cf. also In re Maricopa County, Juvenile Action No. J–72804*, 18 Ariz. App. 560, 504 P.2d 501 (1972), wherein a juvenile appellant attacked the validity of the juvenile appellate procedures, claiming that the shorter time limits for juvenile appeals violated equal protection. This Court stated:

> Appellant's equal protection argument breaks down under analysis, for the Equal Protection Clause of the 14th Amendment to the U.S. Constitution does not require that all persons be treated alike, only that individuals within a certain class be treated equally and that there exist reasonable grounds for the classification. [Citations omitted]

18 Ariz.App. at 565, 504 P.2d at 506.

We agree with the observations expressed in *Cunningham* and *Carter*, as does the Arizona Juvenile Code adopted by our legislature.

Judgment and sentence affirmed.

DONOFRIO, J., concurring.

KLEINSCHMIDT, Visiting Judge, dissenting.

I respectfully dissent. I believe for the reasons stated in *People v. Olivas*, 17 Cal.3d 236, 131 Cal.Rptr. 55, 551 P.2d 375 (1976), that the incarceration of a child for a longer period than an adult could be imprisoned for upon conviction of an identical offense is a denial of the equal protection of the laws. I would reverse and remand for resentencing.

NOTE: The Honorable THOMAS C. KLEINSCHMIDT, Maricopa County Superior Court Judge was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to A.R.S. Const. Art. VI, § 3.