IN RE INTEREST OF A.M.H., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. A.M.H., APPELLANT.
447 N.W.2d 40

Filed October 20, 1989.   No. 89-127.

Robert C. Wester, Assistant Sarpy County Public Defender, for appellant.

Robert M. Spire, Attorney General, and Royce N. Harper for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

This is an appeal by a juvenile from the order of the separate juvenile court of Sarpy County which committed her to the custody of the Nebraska Department of Correctional Services in the care and custody of the Youth Development Center-Geneva. The juvenile appellant assigns as error that her

commitment to the Youth Development Center-Geneva is contrary to law and that the juvenile commitment statute, Neb. Rev. Stat. § 43-286 (Reissue 1988), is unconstitutional, and her commitment therefore is invalid.

The appellant was born on June 6, 1971. The original charges filed against her were: count I, that on September 6, 1987, she operated a motor vehicle without having first obtained a valid, current operator's license and, count II, that she exerted unauthorized control over a propelled motor vehicle of another without the owner's consent. It was also charged that she deported herself so as to injure or endanger seriously the morals or health of herself or others, as described in Neb. Rev. Stat. § 43-247(3)(b) (Reissue 1988).

At her rearraignment held on March 1, 1988, which was attended by the juvenile, her attorney, and her mother, the appellant, pursuant to a plea bargain whereby count II was dismissed, admitted the allegations as to count I. Accordingly, the court found and adjudged the appellant a child within § 43-247(1) and (3)(b) on proof beyond a reasonable doubt. An inquiry as to disposition was held immediately and was done off the record at the request of the appellant's counsel. Disposition was apparently based upon the appellant's confidential social file, which was made a part of the record. It consisted of various dispositional worksheets, reviews, and evaluations. The court ordered the appellant committed "to the care and custody of the Department of Correctional Services, State of Nebraska, by delivery to the Youth Development Center, Geneva, Nebraska," but then ordered the commitment suspended under certain terms and conditions. This appears only in the findings and order contained in the transcript. No other record was made of those proceedings.

Further hearings were had on June 1 and December 2, 1988, and January 12 and February 9, 1989. At the January 12 hearing, the court ordered the previous suspension of commitment vacated and ordered the appellant committed to the care and custody of the Department of Correctional Services by delivery to the Youth Development Center-Geneva. No reason for this action was given in the order of the court found in the transcript on appeal, and no reported record of

those proceedings appears in the bill of exceptions. As a matter of fact, in response to a request by the State for a record of that hearing, as well as hearings held on June 1 and December 2, 1988, the court reporter responded that she had made no record of those proceedings. A motion to vacate that commitment was overruled on February 9, 1989. The juvenile has appealed.

We will deal first with the appellant's second assignment of error, which is based on the contention that § 43-286 denies equal protection to those juveniles who have been adjudicated as juveniles within the meaning of § 43-247(1), (2), or (4), because such juveniles could potentially be confined for a longer period of time than an adult could be incarcerated if convicted of the same offense. In this particular case, appellant could be confined to the Youth Development Center-Geneva until she reaches the age of 19, a possible period of a year and a half, whereas the longest period for which an adult convicted of operating a motor vehicle without an operator's license could be incarcerated is 3 months. See, Neb. Rev. Stat. § 60-430 (Reissue 1988) and § 28-106(1) (Cum. Supp. 1988).

Appellant raises the equal protection issue for the first time in this appeal. A constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal. *Gardner v. Beatrice Foods Co.*, 231 Neb. 464, 436 N.W.2d 542 (1989); *State v. Jordan*, 229 Neb. 563, 427 N.W.2d 796 (1988).

Notwithstanding appellant's failure to properly raise the constitutional issue, her assignment of error is without merit.

Equal protection guarantees that similar persons will be dealt with similarly by the government. *In re Interest of S.L.P.*, 230 Neb. 635, 432 N.W.2d 826 (1988); *State v. Michalski*, 221 Neb. 380, 377 N.W.2d 510 (1985). When examining a claim of deprivation of equal protection, the first inquiry is whether the statute discriminates among those who are similarly situated. *In re Interest of S.L.P., supra*; *In re Interest of M.B., R.P., and J.P.*, 222 Neb. 757, 386 N.W.2d 877 (1986). Section 43-286 does not deny equal protection to juveniles adjudged to be juveniles within the meaning of § 43-247(1), (2), or (4), because such juvenile offenders are not similarly situated to adult offenders inasmuch as an institutional placement of a minor is not to be

equated with the incarceration of an adult offender.

As expressed by the court in *Smith v. State*, 444 S.W.2d 941, 944-45 (Tex. Civ. App. 1969):

> The purpose of our statutes relating to the handling of youthful offenders is, as in other states having juvenile court systems, the education, treatment and rehabilitation of the child, rather than retributive punishment. The emphasis on training and rehabilitation, rather than punishment, is underscored by the declaration that juvenile proceedings are civil, rather than criminal, in nature. Instead of a complaint or indictment we have a "petition." The hearing never results in a conviction, but may lead to an "adjudication of delinquency." Where confinement of the delinquent child is indicated as the proper treatment, the child is not sentenced to prison but, instead, is "committed" to a "training school." The adjudication of delinquency does not carry with it any of the civil disabilities ordinarily resulting from conviction of crime, nor is the child considered to be a criminal because of such adjudication.

The issue before the court in the case of *In re T. D.*, 81 Ill. App. 3d 369, 401 N.E.2d 275 (1980), was whether a juvenile misdemeanant is denied due process and equal protection of the laws by commitment to the Department of Corrections for an indeterminate term. Although the minor failed to raise the constitutional issue in the trial court, the court nevertheless addressed the merits of the issue and found that the minor was not deprived of due process or equal protection by virtue of the dispositional order imposed. The court explained:

> We do not find adult offenders and juveniles adjudicated delinquent to be "similarly circumstanced" and, indeed, it is not the purpose of the Illinois Criminal Code and Juvenile Court Act to treat them as similarly circumstanced. The Juvenile Court Act has a legitimate and salutary goal, "to provide for the rehabilitation of delinquent minors at a stage before they have embarked upon the commission of substantive criminal offenses." . . . The primary purpose of the Act is remedial and preventive rather than punitive. . . .

To this end the juvenile court acts as *parens patriae . . .* 'and the court and its allied agencies must be enabled to give the minor the care and guidance the Act is designed to provide . . . . As the indeterminate sentencing scheme of the Act is considered to play a useful role in achieving this goal and is applied similarly to all juveniles declared to be delinquent, it meets constitutional standards.

. . . We note further that the Act offers unique benefits and favorable treatment to juvenile offenders which are not available to adult offenders. A juvenile may at any time apply to the court for a change in custodianship from the Department of Corrections or for restoration to the custody of his parents . . . and the court must terminate its wardship of a minor and all proceedings under the Act if at any time it finds the best interests of the minor and the public no longer require it to be continued . . . . In addition to this continuous opportunity to seek early release, the juvenile incurs no criminal record and is not disqualified from subsequently holding public office or receiving any license other than, in an appropriate case, one relating to the operation of motor vehicles. . . . There is also special provision for the confinement of minors, who, if under 17 years of age, may not be incarcerated with adult criminal offenders. . . .

(Citations omitted.) 81 Ill. App. 3d at 372-73, 401 N.E.2d at 277.

Although this court has not previously addressed the equal protection issue raised by appellant, this court's decision in *State v. Pinkerton*, 186 Neb. 225, 182 N.W.2d 198 (1970), suggests that in Nebraska, juvenile offenders are not considered to be similarly situated to adult offenders. In *Pinkerton*, a 15-year-old boy was convicted of petit larceny and committed to the custody of the Department of Public Institutions, in the care and custody of the Boys' Training School. He argued that his sentence was excessive because he might be held at the Boys' Training School for years, whereas an adult could not be imprisoned in the county jail for more than 6 months for the same offense.

At issue was the right of the trial court to commit the juvenile

to the custody of the Department of Public Institutions instead of imposing the penalty prescribed by Neb. Rev. Stat. § 28-512 (Reissue 1964) (imprisonment in county jail for not more than 6 months, a fine of not more than $500, or both). This court stated:

> The procedure which was followed in this case is not specifically authorized by any statute of this state. However, it is unnecessary to determine in this case whether the commitment was valid under the Juvenile Court Act because commitment of the defendant to the Boys' Training School is specifically authorized under section 83-465, R.S. Supp., 1969.
>
> It has been the policy of this state, at least since 1879, to authorize special treatment for juvenile offenders. Although prosecuting officers have a discretion as to whether to proceed against juvenile offenders directly under the criminal statutes or under the Juvenile Court Act, the Legislature has provided that in either case a child under the age of 18 may be committed to the Boys' Training School. . . . Section 83-465, R.S. Supp., 1969, provides that when a boy of sane mind under the age of 18 years, has been found guilty of any crime, except murder or manslaughter, in any court of record, the court may order that the boy be committed to the Boys' Training School. It was within the discretion of the district court to commit the defendant in this case to the Boys' Training School.
>
> A commitment to the Boys' Training School is not for a definite period. § 83-472, R.S. Supp., 1969 . . . . The theory of the law is that commitment to the Boys' Training School is not punishment but is the furnishing of protection, care, and training by the State as a substitution for parental authority. The object is reformation, not incarceration for a fixed period.

(Citations omitted.) 186 Neb. at 227, 182 N.W.2d at 199.

As authority for her equal protection argument, appellant relies on *People v. Olivas*, 17 Cal. 3d 236, 551 P.2d 375, 131 Cal. Rptr. 55 (1976). *Olivas* is distinguishable from the case before this court. Olivas was prosecuted as an adult, adjudged by the

same standards that apply to any competent adult, and convicted as an adult in an adult court. *Id.* In the present case, appellant was brought before the juvenile court, adjudged under provisions of the Nebraska Juvenile Code, and committed by the juvenile court to a juvenile facility.

In *Olivas*, the California Supreme Court acknowledged:

> We are not confronted by a situation in which a juvenile adjudged *under the Juvenile Court Law as a juvenile* contends that his term of involuntary confinement may exceed that which might have been imposed on an adult or juvenile who committed the identical unlawful act and was thereafter convicted *in the criminal courts.* Since that situation is not before us, we reserve consideration of the issue should it arise in some future case and we express no opinion on the merits of such a contention.

(Emphasis in original.) *Id.* at 243 n.11, 551 P.2d at 379 n.11, 131 Cal. Rptr. at 59 n.11.

In the case of *In re Eric J.*, 25 Cal. 3d 522, 601 P.2d 549, 159 Cal. Rptr. 317 (1980), the California Supreme Court had before it the type of juvenile case not before it in *Olivas.* The court held that a juvenile is not denied equal protection by the California Welfare and Institutions Code section under which a juvenile may be confined longer than an adult may be incarcerated for the same offense, because minors adjudged wards of the juvenile courts and committed to the Youth Authority are not similarly situated to adults convicted in the criminal courts.

Other courts have addressed the issue of whether equal protection is violated by confinement of a juvenile for a period longer than an adult would be incarcerated for the same offense and have found no violation. See, *People In Interest of M.C.*, 774 P.2d 857 (Colo. 1989); *United States v. Lowery*, 726 F.2d 474 (9th Cir. 1983), *cert. denied* 469 U.S. 837, 105 S. Ct. 133, 83 L. Ed. 2d 73 (1984) (Federal Youth Corrections Act); *State v. Rice*, 98 Wash. 2d 384, 655 P.2d 1145 (1982); *Appeal, In Maricopa Cty. Juvenile No. J-86509*, 124 Ariz. 377, 604 P.2d 641 (1979), *vacating* 124 Ariz. 380, 604 P.2d 644, *cert. denied* 445 U.S. 967, 100 S. Ct. 1660, 64 L. Ed. 2d 245 (1980); *In re Interest of J. K.*, 68 Wis. 2d 426, 228 N.W.2d 713 (1975); *People ex rel. Cromwell v. Warden*, 74 Misc. 2d 642, 345 N.Y.S.2d 381

(1973); *State in Interest of K. V. N.*, 116 N.J. Super. 580, 283 A.2d 337 (1971), *aff'd* 60 N.J. 517, 291 A.2d 577 (1972); *Wilson Appeal*, 438 Pa. 425, 264 A.2d 614 (1970) (juvenile may be confined for a period longer than an adult would be incarcerated for the same offense provided longer commitment will result in the juvenile's receiving appropriate rehabilitative care and not just deprivation of his or her liberty for a longer period); *State v. Pitt*, 28 Conn. Supp. 137, 253 A.2d 671 (1969); *Brisco v. United States*, 368 F.2d 214 (3d Cir. 1966) (Federal Youth Corrections Act).

Since juvenile offenders and adult offenders are not similarly situated, there is no deprivation of equal protection when a juvenile adjudged to be a juvenile within the meaning of § 43-247(1), (2), or (4) is, pursuant to § 43-286, confined for a longer period than an adult convicted of the same offense could be incarcerated.

Appellant's brief contains no discussion of her first assignment of error, i.e., that her commitment to the Youth Development Center-Geneva is contrary to law. This court normally will not consider assignments of error which are not discussed in the brief. *Federal Land Bank of Omaha v. Victor*, 232 Neb. 351, 440 N.W.2d 667 (1989); *State v. Narcisse*, 231 Neb. 805, 438 N.W.2d 743 (1989). However, we have always reserved the right to note plain error. *In re Estate of Fischer*, 227 Neb. 722, 419 N.W.2d 860 (1988); *State v. Beyer*, 218 Neb. 33, 352 N.W.2d 168 (1984).

> "Plain error" is error which was unasserted or uncomplained of at trial or on appeal, but is plainly evident from the record, which prejudicially affects a litigant's substantial right and which is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.

*GFH Financial Serv. Corp. v. Kirk*, 231 Neb. 557, 562, 437 N.W.2d 453, 456 (1989).

We have noted at the outset the absence of a record of several court proceedings. The separate juvenile court is a court of record. Neb. Rev. Stat. § 43-2,111 (Reissue 1988). In the absence of a valid waiver by all parties to the proceedings, a

verbatim transcript of those proceedings shall be made and preserved. See, also, *In re Interest of R.A.*, 226 Neb. 160, 410 N.W.2d 110 (1987).

Furthermore, the court below found the appellant to be a child within § 43-247(1), in other words, a juvenile who has committed a misdemeanor or an act in violation of a city ordinance, other than a traffic offense. The juvenile in this case, a traffic violator, should have been found to be within § 43-247(4). Additionally, we know of no statutory authority for the court to issue a suspended commitment to the Department of Correctional Services, as was done in this case. Finally, Neb. Rev. Stat. § 43-279 (Reissue 1988) requires that the court advise the juvenile of his or her right to counsel, the privilege against self-incrimination, the right to confront witnesses, the right to testify and call witnesses in his or her behalf, the right to a speedy adjudication, and the right to appeal and to have a transcript for such purpose. This appears to be a prerequisite to the acceptance of an in-court admission, which was not done in this case. However, as we have held before, the adjudication is an appealable order, and the time for appeal of that portion of these proceedings has long since passed. *In re Interest of Z.R.*, 226 Neb. 770, 415 N.W.2d 128 (1987).

We note as plain error the primary deficiency, which, although hidden in a maze of statutory redundancy, is the apparent lack of authority to commit a juvenile to the Department of Correctional Services as a status offender, i.e., one under § 43-247(3)(b).

Section 43-286 provides that a juvenile who is adjudicated to be a juvenile described in § 43-247(1), (2), (3)(b), or (4) may have his or her dispositional portion of the hearing continued from time to time under such terms and conditions as the court may prescribe, may be placed on probation subject to the supervision of a probation officer, or may be placed in a suitable family home or institution subject to the supervision of the probation officer. However, § 43-286(2) contains an exception, which provides that *"[e]xcept as provided in section 43-287*, the court may commit such juvenile to the care and custody of the Department of Correctional Services . . . ."

(Emphasis supplied.)

Neb. Rev. Stat. § 43-287 (Reissue 1988) provides:

Notwithstanding the provisions of subdivision (2) of section 43-286, when any juvenile is found by the court to be a juvenile defined by subdivision (3)(b) of section 43-247, the court may (1) enter such order as it is empowered to enter in the case of a juvenile described in subdivision (1) or (2) of section 43-247, *except that no such juvenile shall be committed to the Youth Development Center at Kearney or Geneva . . . .*

(Emphasis supplied.)

Assuming that the appellant originally had been placed on probation (she was subjected to a suspended commitment, which is not probation), § 43-286(4)(e) provides that if a juvenile is found to have violated the terms of his or her probation, the court may modify the terms of probation, enter any order which could have been made at the time of the original order of probation, or in the case of a juvenile adjudicated to be within the definitions of § 43-247(3)(b), "the court, after considering the dispositions available, may in addition commit such juvenile to the . . . Department of Correctional Services *under section 43-287 . . . .*" (Emphasis supplied.) We thus move full circle back to § 43-287, which prohibits the commitment of a subsection (3)(b) juvenile to the Youth Development Center at Kearney or Geneva.

Therefore, it would seem, the statute forbids the treatment of a child in such a setting as the Geneva institution, which apparently was created for the very purpose of dealing with a subsection (3)(b) juvenile, i.e., one who is habitually disobedient, is uncontrolled by his or her parent, or "who deports himself or herself so as to injure or endanger seriously the morals or health of himself, herself, or others; or who is habitually truant from home or school." § 43-247(3)(b).

We seriously doubt that the Legislature intended to prohibit such a result, particularly when it seems to be that the interests of the juvenile and the welfare of the community demanded such commitment as suggested in § 43-286(2). However, it is not within the province of this court to attempt to interpret what we consider to be the plain and unambiguous language of the

statutory provisions.

Thus, we examine the reasonableness of the commitment in this case. It possibly will restrict appellant's freedom for approximately 18 months for the violation of a traffic rule prohibiting the operation of a motor vehicle without a license.

We must review the findings of the trial court de novo on the record. *In re Interest of Jones*, 230 Neb. 462, 432 N.W.2d 46 (1988); *In re Interest of T.C.*, 226 Neb. 116, 409 N.W.2d 607 (1987).

The court made no findings supporting the commitment other than that the juvenile was adjudged a child "within Subdivision (1) and (3b) of Section 43-247, R.R.S. Nebraska, 1979 Supp. . . . ." It would seem apparent that she was committed not for driving an automobile without a license, but because of her consistent failure to deal with her alcohol abuse problem, including the falsification of attendance certificates at AA meetings; her neglect and the continued deterioration of her school responsibilities; her disregard of various court orders for a period of months; and the perceived abandonment of parental responsibilities by the juvenile's mother. Had the juvenile been lawfully committed to the care of the Department of Social Services as a subsection (3)(b) status offender, we would have little trouble finding an absence of an abuse of discretion by the trial court. However, confinement in the Youth Development Center-Geneva for the sole offense of driving without a license is unreasonable and an abuse of discretion, and cannot stand.

The judgment of the separate juvenile court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.