504 P.2d 501

In the Matter of the Appeal in MARICOPA
COUNTY, JUVENILE ACTION
NO. J–72804.

No. 1 CA–CIV 2123.

Court of Appeals of Arizona,
Division 1,
Department B.

Dec. 19, 1972.

Review Denied Jan. 9, 1973.

Treon, Warnicke & Dann by B. Michael Dann, Phoenix, for appellant.

Moise Berger, Maricopa County Atty. by C. O. Lamp, Deputy County Atty., Phoenix, for appellee.

JACOBSON, Judge.

This is an appeal from an order of the Maricopa County Superior Court, sitting as a juvenile court, transferring a juvenile to superior court for trial as an adult.

On May 11, 1972, a petition was filed with the juvenile division of the Maricopa County Superior Court alleging that appellant, then 17 years of age, was in violation of his probation and was delinquent on the grounds that on May 10, 1972, the appellant had allegedly murdered Robert Wyatt McNary, who apparently died as a result of knife wounds received in a fight with appellant.

On May 15, 1972, appellant, his mother, and his attorney appeared before a juvenile court referee who recommended that the matter be set down for a "hearing for transfer and/or adjudication" on June 22, 1972. At the time set for the transfer hearing, appellant appeared before the juvenile court with his counsel and his mother. Appellant's counsel at the commencement of these proceedings, in open court and in the presence of the appellant and his mother, waived a showing of probable cause by the state that the appellant committed the act (knifing of Mr. McNary) which gave rise to the filing of the delinquency petition [1] and merely tried to the court the issue of whether appellant should be transferred to superior court for trial as an adult.

Following the probable cause waiver, the court acknowledged the presence in the courtroom of the appellant's "social file" and that all parties concerned were aware of its contents. It is apparently the practice of the juvenile court to keep a "social file" [2] which contains various reports as to the results of psychological testing, recommendations and reports of various counselors and a recommendation and report of the particular juvenile officer assigned to the juvenile's case, separate and apart from the "legal file" of the court. The "legal file" contains merely the formal petition, warrants, and other related matters dealing with the legal procedural aspects of the juvenile's case. It is also apparent from the record that appellant's counsel was familiar with the contents of the "social file", as several witnesses called by him had entered reports in that file.

Appellant called five witnesses in support of his position that he should not be transferred for trial as an adult. This testimony centered primarily on the issue of whether the appellant was amenable to treatment or rehabilitation during the period of time during which the appellant would remain under the jurisdiction of the

1. The transcript of the proceedings made clear that appellant's counsel's explanation to the court for the waiver of the probable cause aspects of the Rule 14 hearing, Rules of Procedure for the Juvenile Court, 17 A.R.S., was based on a commitment by the state that appellant's charge would be reduced to voluntary manslaughter upon a plea of guilty, if transferred to superior court. As previously indicated, appellant and his mother were present during this explanation.

2. This file is required by Rule 12, Rules of Procedure for the Juvenile Court.

juvenile court, approximately three and three-quarters years.[3]

Following the conclusion of the hearing, the court orally informed the parties of the reasons for his transferring the appellant to superior court for trial as an adult. However, the juvenile court in its written order making the transfer merely couched its order in the conclusionary terms of Rule 14(b), Rules of Procedure for the Juvenile Court.

Appellant raises the following issues on appeal:

(1) The written transfer order failed to comply with Rule 14(c), Rules of Procedure for the Juvenile Court, and this "facial defect" requires a remand to juvenile court for further proceedings.

(2) The evidence before the juvenile court was insufficient to support the order of transfer.

(3) The waiver of a hearing on the issue of probable cause by appellant's counsel is invalid as the record failed to disclose that the appellant or his mother intelligently and knowingly concurred in that waiver.

(4) The newly promulgated rules of procedure governing appeals from final orders of the juvenile court denied appellant due process, equal protection of the laws and effective assistance of counsel.

Insofar as appellant's first issue is concerned, we are of the opinion that the point is well taken. Rules 14(b) and (c), Rules of Procedure for the Juvenile Court, provides:

"(b) The court may transfer the action for criminal prosecution to the appropriate court having jurisdiction of the offense if the court finds probable cause and reasonable grounds to believe that:

"(1) The child is not amenable to treatment or rehabilitation as a delin-

quent child through available facilities; and

"(2) The child is not committable to an institution for mentally deficient, mentally defective or mentally ill persons; and

"(3) The safety or interest of the public requires that the child be transferred for criminal prosecution.

"(c) Upon such transfer the juvenile court *shall state the reasons therefor* by minute entry or written order and the child shall thereupon be transferred to the custody of an appropriate law enforcement officer, released on bail, if the offense is bailable, or released upon his own recognizance." (Emphasis added.)

■ It is apparent that the underlined portion of Rule 14(c) requires that the juvenile court, in addition to determining the conclusionary prerequisites for a transfer set forth under 14(b), must state the reasons underlying these conclusions. This court, having come to the conclusion that the writing of this decision, utilized the procedure set forth in In re Anonymous, 14 Ariz.App. 466, 484 P.2d 235 (1971), and on November 3, 1972, suspended this appeal, revesting jurisdiction in the juvenile court to supplement its written order. On November 21, such a supplemental order was received. This court then allowed counsel additional time to file any objections to this supplemental written order. Objections having been filed and considered by the court, it is our opinion that the supplemental order of transfer satisfactorily complies with Rule 14(c), Rules of Procedure for the Juvenile Court.

■ Appellant next raises the sufficiency of the evidence to support the Juvenile Court's supplemental transfer order. As previously indicated, Rule 14(b), Rules of Procedure for the Juvenile Court, requires the juvenile court to make three findings, all of which must be met before it can

---

3. At the time the appellant allegedly committed the act of delinquency with which he was charged, the juvenile court retained jurisdiction of the juvenile until he became 21 years of age. A.R.S. § 8–202 (1970).

transfer a juvenile to superior court for trial as an adult. In this regard, appellant does not seriously argue that there is insufficient evidence to support the finding that he is not committable to an institution for the mentally ill, or that the safety or interest of the public does not require a criminal prosecution. He does, however, seriously question the evidence supporting the finding that the appellant is not amenable to treatment or rehabilitation as a delinquent child through available facilities. In support of this argument, the appellant points to the testimony of four of the witnesses presented at the hearing, all of whom in one manner or another expressed their opinion that the appellant was amenable to treatment in some sort of controlled environment. Most of these witnesses, however, were of the opinion that no facilities existed within the state of Arizona which could provide the services necessary for the rehabilitation process. They were also unable to state with any degree of certainty the availability of out of state facilities for this particular juvenile. These witnesses, who consisted of a clinical psychologist, an employee of the juvenile department with six months' experience and a major in psychology and counseling, a counselor for the Arizona Family, and a counselor with the Economic and Manpower Corporation, were also of the opinion that confinement in the Arizona State Prison never rehabilitated anyone. One of the witnesses, for this reason, stated he never recommended incarceration in that institution. On the other hand, the record before the juvenile judge reveals that the appellant first came to the attention of the juvenile authorities in 1965, charged with burglary. In 1968 he was again referred to juvenile authorities by the Mesa Police Department for burglary and theft. While this matter was pending, he was again referred on September 9, 1968, by the Mesa Police Department for curfew violation and informal probation was continued. He remained on informal probation for approximately eight months. Approximately one and one-half years later, he was again referred to juvenile authorities on January 21, 1971, for shoplifting and was placed on formal probation. Then ten months later he was again referred to juvenile authorities on December 12, 1971, for shoplifting and assault. He was on probation for this charge when the knifing which gave rise to the present proceedings occurred. As was stated by the juvenile probation officer in his report to the court:

"[Appellant] has been exposed to the Juvenile Court process for the past 8 years, approximately, and has not responded favorably to this exposure. [Appellant] had been on formal probation for a period of approximately 55 days when he was referred once again to this department concerning his involvement in a knifing which resulted in the death of another individual. Therefore, considering the extent of contact which [appellant] has had with the Juvenile Probation Department, first through informal probation and then, most recently, under formal probation, it is evident that, not only has probation been a failure, but [appellant] has deteriorated to the point where he is an extreme danger to society."

Admittedly, the court in order to adequately inform itself as to all aspects of the behavioral sciences as they specifically apply to a juvenile, should consider and be receptive to experts in this field. However, when we consider the nature of this testimony—the attempt to predict human behavior in a particular individual over a definite period of time—the juvenile court should not be limited solely to such opinion evidence. Rather, the juvenile judge should also properly consider the particular juvenile's track record in the past and his amenability to the juvenile processes that this record discloses. When considered in this light, and considering the expert's opinion that a controlled environment was necessary and the "iffy" availability of such environment, we cannot say that there was insufficient evidence to support the juvenile court's finding that the appellant

was not amenable to treatment as a juvenile.

The appellant next raises the contention that the record fails to disclose an intelligent and voluntary waiver by either the juvenile or his mother of the probable cause aspect of the adjudicatory hearing. In this regard, it should be recalled that the waiver was made by appellant's counsel in open court and in the presence of the appellant and his mother. The pertinent language of Rule 14(a), Rules of Procedure for the Juvenile Court, provides:

"(a) The transfer hearing shall include evidence of the offense alleged, unless waived, and of the transfer investigation report. At the conclusion of the transfer hearing, the court shall determine whether an offense has been committed and that probable cause exists to believe that the child committed the offense alleged. If the court finds such probable cause or evidence of probable cause has been waived, upon its own motion or the motion of any interested party, it may order, in addition to the transfer investigation, an investigation including a mental and physical examination of the child, to be made by a public or private agency, or by a person qualified to make such examinations."

■ This "probable cause" hearing has been likened to a preliminary hearing before a justice of the peace in an adult felony prosecution. In re Anonymous, *supra.* This preliminary hearing is not a trial to determine guilt or innocence, but is merely to determine whether an offense has been committed and whether probable cause exists to believe the accused has committed the offense. State v. Wise, 101 Ariz. 315, 419 P.2d 342 (1966); In re Anonymous, *supra*; State v. Schumacher, 97 Ariz. 354, 400 P.2d 584 (1965).

■ Appellant is, in essence, arguing that the principles enunciated in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), dealing with a plea of guilty to an adult crime are applicable to a waiver of a probable cause hearing before

the juvenile court. In support of this argument, appellant cites Haziel v. United States, 131 U.S.App.D.C. 298, 404 F.2d 1275 (1968), and In re Michael M., 11 Cal.App.3d 741, 96 Cal.Rptr. 887 (1970). In our opinion, neither of these decisions supports appellant's position. In Haziel v. United States, *supra,* the waiver by counsel was not only of the probable cause aspect of the juvenile hearing, but of the entire juvenile proceedings as such and counsel agreed the juvenile should be transferred to adult court for trial as an adult. In *Haziel* there was no investigation to determine whether the transfer in this particular case was proper, clearly in contravention of Kent v. U. S., 383 U.S. 541, 86 S. Ct. 1045, 16 L.Ed.2d 84 (1966), which held that a juvenile's right to a transfer hearing, like the right to a trial on a plea of not guilty in the adult court is "critically important". See Black v. U. S., 122 U.S. App.D.C. 393, 355 F.2d 104 (1965); Watkins v. U. S., 119 U.S.App.D.C. 406, 343 F.2d 278 (1964).

This is a far cry from the facts in this case where the transfer to adult court was vigorously and hotly contested and remains so in this appeal. However, even in the case of a waiver of the entire juvenile proceedings, the *Haziel* court was not prepared to say that it could not be waived by counsel:

"[a]nd while it would be preferable practice for the court to address the juvenile personally to insure that his decision to refuse a waiver hearing [remand or transfer hearing in Arizona] is made knowingly, we do not determine whether the reliance Rule 23 places upon counsel is in all cases improper . . .. We hold only that the record in this case does not permit us to conclude that the waiver without a hearing was proper in this case." 404 F.2d at 1281.

■ In re Michael M., *supra,* does not deal with a waiver of probable cause, but deals expressly with a plea of guilty by a juvenile in a juvenile court. In such a case, the California court held that since

In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), requires juveniles in general to be afforded the same protection as adults in like situations, the standards set forth in *Boykin* for adult pleas of guilty are likewise applicable to juveniles pleading guilty in juvenile courts. This opinion is not authority for waiver of probable cause where the issue of guilt or innocence will at another proceeding be established.

On the other hand, Arizona has specifically held that a preliminary hearing (probable cause hearing) may be waived by counsel for the accused, even in the absence of the defendant. State v. Valenzuela, 98 Ariz. 189, 403 P.2d 286 (1965). While *Valenzuela* was a pre-*Boykin* decision, the Arizona Supreme Court has, on several occasions since *Boykin,* held that an adult may waive a preliminary hearing and such waiver may be expressed or *implied.* State v. Mendoza, 107 Ariz. 51, 481 P.2d 844 (1971); State v. Hansen, 105 Ariz. 368, 464 P.2d 960 (1970); State v. Davis, 105 Ariz. 498, 467 P.2d 743 (1970); Rule 17, Rules of Criminal Procedure, 17 A.R.S. In this case, where counsel waived the probable cause aspects of a Rule 14 hearing in open court and in the presence of the juvenile and his mother, we hold that such waiver was valid, and the standards set forth in Boykin v. Alabama, *supra,* are not applicable.

Appellant lastly questions the validity of the new rules of procedure dealing with appeal of final orders of the juvenile court, couching his attack in terms of denial of due process, denial of equal protection and denial of effective assistance of counsel. Specifically, appellant's argument centers around denial of equal protection and assistance of counsel pointing to the different appellate procedures applicable to adults and juveniles and the abbreviated time sequences applicable to juvenile appeals as compared to adult appeals. Appellant's equal protection argument breaks down under analysis, for the Equal Protection Clause of the 14th Amendment to the U.S. Constitution does not require that all persons be treated alike, only that individuals within a certain class be treated equally and that there exist reasonable grounds for the classification. Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); Porter v. City of Oberlin, 1 Ohio St.2d 143, 205 N.E.2d 363 (1965). In this regard, appellant admits there exists a reasonable ground for treating juvenile offenders in a different classification than adults.

The purpose of the juvenile appellate rules is to expedite and facilitate the handling of juvenile appeals. While recognizing the worthiness of such purpose, appellant argues that requiring him to file his appeal and his opening brief within 15 days of the juvenile court's order appealed from (Rule 25, Rules of Procedure of the Juvenile Court) deprives him of the effectiveness of counsel, particularly when the appeal is based upon evidentiary matters for which a reporter's transcript is required. This argument overlooks Rule 27(b), Rules of Procedure for the Juvenile Court, which allows the Court of Appeals to "take the matter under advisement and order the filing of additional matters in the court, including but not limited to briefs, reporters' transcripts or exhibits."

Counsel who are caught in the time trap of filing the notice of appeal and obtaining a transcription of the reporters' notes may and do make application to this court for relief. Given the proper classification between adults and juveniles and relief available in the appropriate case from stringent time limitations, appellant's attack on the appellate procedure for juvenile appeals on constitutional grounds must fail.

For the foregoing reasons, the order of the juvenile court as supplemented, transferring the appellant to superior court for trial as an adult, is affirmed.

HAIRE, C. J., Division 1, and EUBANK, J., concur.