509 P.2d 1047

**In the Matter of the Appeal in PIMA COUNTY, JUVENILE ACTION NO. 35834–I.**

**No. 2 CA–CIV 1406.**

Court of Appeals of Arizona, Division 2.

May 15, 1973.

Auerbach & Freeman, by Roger S. Auerbach, Tucson, for appellant.

Dennis DeConcini, Pima County Atty., by John W. Dickinson and Fred Belman, Deputy County Attys., Tucson, for appellee.

KRUCKER, Judge.

This appeal questions the correctness of a juvenile court order refusing to suspend criminal prosecution of a minor and ordering him transferred for prosecution as an adult. Appellant claims that there were no reasonable grounds to believe (1) he was not amenable to treatment or rehabilitation and (2) that he was not commitable to an institution for mentally deficient or mentally ill persons.

Pursuant to Rule 14, Rules of Juvenile Court, 17 A.R.S., the court made the requisite finding of probable cause (not challenged on appeal) and also found that the minor was not amenable to treatment or rehabilitation as a delinquent child through available facilities, that he was not commitable to an institution for mentally deficient, mentally defective or mentally ill persons, and that the safety or interests of the public required that he be transferred for criminal prosecution. Also in accordance with said Rule, the court stated its reasons:

"1. The minor will reach his 18th birthday on the 12 day of April 1973, approximately 45 days from the date of transfer. At that time the jurisdiction of the juvenile court or juvenile division of the Department of Corrections would cease.

2. The minor is charged with an extremely violent offense that would indicate a need for court services in an excess of the 45 days available if he were found guilty.

3. That by transferring the minor to adult jurisdiction the child would receive the extended court services that a violation of this type would indicate.

4. That there are no rehabilitative services available to the juvenile court or juvenile division of the Department of Corrections that could be effective within the available time frame.

5. That [minor] has been a member of the United States Marine Corps since June of 1972 and by virtue of this has received training and has been treated in the same manner as an adult, therefore treatment as a juvenile would be inappropriate.

6. That because of his enlistment in the Marine Corps the minor has attained the status of an emancipated minor and is solely responsible for his own actions.

7. That rehabilitation of juveniles is generally attempted through use of the family unit and this is impractical in this case because of the minor's emancipated state and because his family resides out of the jurisdiction.

8. That no evidence has been presented that would indicate any physical or mental disorders."

Appellant places much reliance on the decision of this court in the case of In re Anonymous, Juvenile Court No. 6358-4, 14 Ariz.App. 466, 484 P.2d 235 (1971) for his contention that the court had no reasonable grounds to support its findings. It is true in that case, as here, the juvenile was 17 years old. There, however, in contrast to the instant case, the juvenile had had numerous prior referrals to juvenile court, had been sent to the Arizona State Hospital for psychological examinations, had been placed on probation and then committed to the State Department of Corrections and sent to Fort Grant four different times. Also, testimony of a psychologist and two psychiatrists, together with a report from the Arizona State Hospital, were presented to the juvenile court concerning the minor's psychological and psychiatric condition. We stated:

"His past record and the present charges do indeed indicate that he is a menace to society and apparently has not profited at all under the protection of the juvenile system. There comes a time when a minor's welcome in Juvenile

Court is worn out and he must understand that if he continually refuses to be receptive to treatment under the juvenile system and continues to be an irresponsible person, the only alternative left for the Juvenile Court is to transfer him to the adult court for criminal prosecution.

This minor has had too many bites from the apple and the court was well justified in ordering a transfer." 14 Ariz.App. at 475, 484 P.2d at 244.

■ We do not construe this former decision, as appellant would have us do, as setting forth minimal standards of evidence upon which to base a transfer order. In Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the landmark decision on waiver of juvenile court jurisdiction, the United States Supreme Court set forth the following determinative factors to be considered on a transfer hearing:

1. The seriousness of the alleged offense to the community and whether protection of the community requires waiver.

2. Whether the alleged offense was committed in an aggressive, violent, premeditated or wilful manner.

3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted.

4. The prosecutive merit of the complaint. . . .

5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults. . . .

6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.

7. The record and previous history of the juvenile. . . .

8. The prospect for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court.

■ Applying these criteria to the facts of this case, we are unable to agree with appellant's position. At the time of the hearing he was 17 years and 10 and ½ months old. He had been serving in the Marine Corps for approximately eight months, had completed his basic training and was assigned to an artillery unit at Camp Pendleton, California. In January, 1972, he went AWOL and hitchhiked to Tucson with three other persons, all adults. In the early morning hours of January 19 they were picked up by Patrick Corrales on South Sixth Avenue, Tucson, who offered to help them in finding a place to spend the night. While thus engaged, the appellant, who was seated in the back of the car, proceeded to choke the driver with a chain and a companion beat the driver with a tire iron. The victim received blows to the head that required hospitalization.

After the assault the victim was dumped on the ground and the four hitchhikers drove off in his car. The appellant's mother resided in Oklahoma City and his father in Henderson, Kentucky. For the previous five years appellant had resided in California with his grandparents. He had no history of prior offenses but there was some evidence that he had become involved with drugs after completion of his basic training and continued to be so involved.

A Pima County Juvenile Court investigator to whom this case had been assigned for investigation testified at the hearing. He had spoken with appellant approximately twenty times and concluded that he would not be amenable to treatment as a juvenile. He gave as his reasons the fact that there was such a brief time to work with him since he would soon be 18, there would be no opportunity to work with his family since they resided out of state, and

the lack of facilities at the juvenile level to cope with appellant's drug problem. He also indicated that he had observed no health problems. In his written report he stated that appellant had quit school in the ninth grade (October, 1970) and had been pretty much on his own since then; that he had not been observed either by himself or other members of the detention staff to have any strange behavior patterns which would give any indication that psychiatric treatment was necessary; that on June 9, 1972, appellant had been admitted to the Marine Corps, given a "clean bill of health," and that the Marine Corps at that time felt that he was mentally healthy. He had had conversations with appellant's mother who gave him no reason to believe that her son had "ever needed any mental help."

There is no question that the alleged offense was serious, was committed in an aggressive and violent manner and was entitled to greater weight since it was against a person and resulted in personal injury. There was clearly sufficient evidence upon which a grand jury might be expected to return an indictment and appellant's associates in the alleged offense were adults so that the entire offense could be disposed of by trial in one court. Appellant's entire background reflects a sophistication and maturity—in fact, when he was taken to the juvenile detention facility he refused to make a statement and asked for a lawyer. Although he had no previous juvenile court record, we are disinclined to give undue emphasis to such a factor. Mikulovsky v. State, 54 Wis.2d 699, 196 N.W.2d 748 (1972).

We are unable to say that it was error to find that there was no likelihood of reasonable rehabilitation of appellant by the use of procedures, services and facilities available to the juvenile court. Under A.

R.S. § 8–241, subsec. A(2), as amended, the juvenile court can "award" a delinquent child:

"(a) To the care of his parents, subject to supervision of a probation department.

(b) To a probation department, subject to such conditions as the court may impose.

(c) To a reputable citizen of good moral character, subject to the supervision of a probation department.

(d) To a private agency or institution, subject to the supervision of a probation officer.

(e) To the department of corrections without further directions as to placement by that department."

However, A.R.S. § 8–246, subsec. B provides:

"The awarding of a child *shall not extend beyond the minority* of the child, and commitments to the department of corrections shall be for the term of *the child's minority* unless sooner discharged by the department of corrections." (Emphasis added.)

The legislative definition of the term "minority" was altered by Ch. 146, Laws of 1972. A "minor" now means a person under the age of 18 years. A.R.S. § 1–215, subsec. 17. Thus we see that any disposition available to the juvenile court under the existing juvenile code could not extend beyond April 12, 1973, when appellant would become 18 years of age.[1]

■ A juvenile court judge in waiver proceedings must consider the alternatives to criminal prosecution and decide whether the *parens patriae* plan of procedure is desirable and proper in the particular case. United States v. Tate, 466 F.2d 432 (D.C. Cir.1972). It is proper for him to consider

---

1. Commitments to the department of corrections prior to the enactment of Ch. 146 are unaffected by the lowering of the age of majority as § 88 provides:

"Any person under the age of twenty-one who, on the effective date of this act, is under commitment to or is subject to

conditional release from the department of corrections shall remain subject to the authority of the department in the same manner as if the provisions of this act had not taken effect." *See* note following A.R.S. § 1–215, pocket part 2 A.R.S.

the short time span available to ensure success in any rehabilitative endeavor. United States v. Howard, 146 U.S.App.D.C. 10, 449 F.2d 1086 (1971). Appellant was so close to the age of 18 years there was no disposition reasonably calculated to effect rehabilitation since commitment to the department of corrections or to any of the persons enumerated in the statute would terminate when he reached 18.

 As noted above, the court investigator reported an absence of any mental health problems. Rule 14, Rules of the Juvenile Court, provides in pertinent part:

"If the court finds such probable cause or evidence of probable cause has been waived, *upon its own motion or the motion of any interested party,* it may order, in addition to the transfer investigation, an investigation including a mental and physical examination of the child, to be made by a public or private agency, or by a person qualified to make such examinations." (Emphasis added.)

The record reflects no request for a mental examination nor any evidence which would require the court to *sua sponte* order a mental examination. Appellant takes the position that before a proper waiver could be made the juvenile court was obligated to hear testimony from psychologists and psychiatrists. Concededly there are situations when testimony of this nature might be appropriate, but it is not mandatory. Mikulovsky v. State, supra. Since the law indulges in the presumption of sanity, appellant had the burden of presenting satisfactory proof to the contrary. Grannum v. Berard, 70 Wash.2d 304, 422 P.2d 812 (1967); Matthews v. Acacia Mutual Life Insurance Company, 392 P.2d 369 (Okl. 1964). Appellant, having failed to overcome this presumption, cannot now complain of the juvenile court's finding of non-commitability.

In allowing juvenile courts to waive jurisdiction as to minors under 18, the legislature has removed the protective shield against criminal responsibility for those individuals who, in the court's opinion, would

more appropriately be dealt with as an adult. In the instant case, after a proper examination of relevant criteria, the juvenile court found it would be contrary to the best interests of appellant and the public to hear the matter in juvenile court. We find no error in the transfer order and therefore affirm.

HATHAWAY, C. J., and HOWARD, J., concur.