654 P.2d 39

**In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. J–93117.**

**No. 1 CA–JUV 174.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 21, 1982.

Review Denied Nov. 16, 1982.

Tom Collins, Maricopa County Atty. by Laura J. Houseworth, Deputy County Atty., Phoenix, for appellee State of Ariz.

Earl Terman, Scottsdale, for appellant.

## OPINION

CORCORAN, Judge.

This appeal questions whether a juvenile court order waiving jurisdiction over a juvenile who was almost 18 years of age on the date of the order which transferred or remanded him for prosecution as an adult is correct.

Pursuant to rule 14, Rules of Procedure for the Juvenile Court, the court made the requisite finding of probable cause (not challenged on appeal) and also found that the juvenile, Gilbert, was not amenable to treatment or rehabilitation as a delinquent child through available facilities, that he was not commitable to an institution for the mentally deficient, mentally defective or mentally ill persons, and that the safety or interests of the public required that he be transferred to the adult court for criminal prosecution. Also in accordance with the rule, the court set forth its findings by minute entry on December 23, 1981.[1] Gilbert only challenges finding 7 which states:

1. RULING ON TRANSFER UNDER
ADVISEMENT

This matter having been under advisement, THE COURT FINDS the following in accord-

ance with *Kent v. U.S.,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966):

1. The seriousness of the alleged offense to the community: Class 2 felony.

7. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile based on:

  a.  his age;

  b.  the history of past referrals, especially in light of the recent nature of same;

  c.  the present referral;

  d.  the disfunctional family situation;

by the use of procedures, services and facilities currently *available to the Juvenile Court* are nill.

2. The alleged offense was committed in an aggressive and premeditated manner.

3. The alleged offense was against person.

4. The prosecutive merit of the complaint is such that a Grand Jury would be expected to return an indictment and a Magistrate find probable cause.

5. Desirability of trial and disposition of the entire offense in one court when the juvenile's associates are adults: not applicable at the present time.

6. ENVIRONMENT AND PAST RECORD: The juvenile will be 18 on February 4, 1982 and, consequently, will not be subject to the juvenile justice system subsequent to that date, see *In the Matter of Appeal in Maricopa County Juvenile J–86509,* 124 Ariz. 377, 604 P.2d 641 (1979).

In a psychological examination conducted in October, 1981, he was found to have an I.Q. of 133 which is in the very superior range but he suffers from a conduct disorder. He is not, therefore, commitable to an institution for the mentally ill or mentally deficient.

The present referral involves the strong armed [sic] robbery of a 15 year old by the juvenile and three other confederates resulting in slight injury to the victim and the theft of the victim's portable TV/stereo.

His previous referral history commenced in February, 1981, with a graffiti spraying incident in association with one of his confederates in the instant aggravated robbery. He was placed on probation for this incident at which time a six pack of beer shoplift was judicially adjusted. There was another aggravated assault referral from Tolleson involving some type of a gang rumble in which one of the Tolleson group received a minor stab wound. He was once more associated with Robert Bauer in that matter but it was adjusted, facts not proven.

He is one of nine children of his mother who has other children by various individuals. His

(Emphasis added.)  Gilbert contends that there were no reasonable grounds to believe he was not amenable to treatment or rehabilitation.  We do not agree.

■ It has frequently been held that the juvenile court has the power to waive its jurisdiction to hold a child under the age of 18 years and to transfer him for trial in adult criminal court. *State v. Jiminez,* 109 Ariz. 305, 509 P.2d 198 (1973).  In exercising this power, a juvenile court judge must consider· the alternatives to criminal prosecution and decide whether the *parens patriae* plan of procedure is desirable and proper in the particular case. *In the Matter of the Appeal in Santa Cruz County, Juvenile Ac-*

parents were divorced in 1968 and he has occasional contact with his father who is an alcoholic.  His mother is presently living at home with a boyfriend and there are no immediate plans to be married.  One of his older brothers has or is serving time for some type of homicide offense.

It should be noted that since Mr. Kennedy has written his report dated December 4, 1981, he has changed his recommendation from transfer to retention in the juvenile system and further that Gilbert has completed the requirements for a G.E.D. certificate while in the Detention Center.  It should be noted that he was detained a significantly longer time than the other youths involved in this matter.  Gilbert further expresses an interest in either college or the military service.  It appears that it was not until his detention that he began to realize his full intellectual potential as indicated by his I.Q.

7. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile based on:

  a.  his age;

  b.  the history of past referrals, especially in light of the recent nature of same;

  c.  the present referral;

  d.  the disfunctional family situation;

by the use of procedures, services and facilities currently available to the Juvenile Court are nill.

THE COURT FINDS reasonable grounds to believe that;

1. The child is not amenable to treatment or rehabilitation as a delinquent child through available facilities; and

2. The child is not commitable to an institution for mentally deficient, mentally defective or mentally ill person; and

3. The safety or interest of the public requires that the child be transferred for criminal prosecution.

ORDERED granting State's motion to transfer to adult court for prosecution.

tion No. J–1865, 115 Ariz. 405, 565 P.2d 911 (App.1977); In re Pima County, Juvenile Action No. 35834–1, 20 Ariz.App. 10, 509 P.2d 1047 (1973). Before a judge can transfer a juvenile for criminal prosecution, he must consider the juvenile facilities available to carry out a meaningful rehabilitative treatment program. Rule 14(b).[2] In making this inquiry, the juvenile court can consider whether a juvenile would best be dealt with by a wider range of powers, longer term possibilities, and a greater choice of facilities available to the adult corrections system.

■ The juvenile court is entitled to consider, as it did, that Gilbert was 17 years and ten and one-half months old at the time of his waiver hearing, and would be subject to juvenile jurisdictions for less than six weeks.[3] Ariz. Const. art. 6, § 15. In the Matter of the Appeal in Maricopa County Juvenile No. J–86509, 124 Ariz. 377, 604 P.2d 641 (1979); McBeth v. Rose, 111 Ariz. 399, 531 P.2d 156 (1975). Even assuming that a juvenile like Gilbert could be rehabilitated if provided with rehabilitation programs over a longer period of time, the court could reasonably conclude that the short span available to the juvenile authorities in this case would be insufficient to ensure success in any rehabilitative endeavor.

■ The psychologist's report reveals the fact that Gilbert is at a critical juncture in his life.

He [Gilbert] has good leadership qualities and, therefore, it is crucial in regards to where Gilbert wants to lead either towards a more responsible life or towards a more irresponsible antisocial behavior pattern. *Right now Gilbert seems to be*

---

**2. Rule 14. Transfer Hearing; Order**

(a) The transfer hearing shall include evidence of the offense alleged, unless waived, and of the transfer investigation report. At the conclusion of the transfer hearing, the court shall determine whether an offense has been committed and that probable cause exists to believe that the child committed the offense alleged. If the court finds such probable cause or evidence of probable cause has been waived, upon its own motion or the motion of any interested party, it may order, in addition to the transfer investigation, an investigation including a mental and physical examination of the child, to be made by a public or private agency, or by a person qualified to make such examinations.

(b) The court may transfer the action for criminal prosecution to the appropriate court having jurisdiction of the offense if the court finds probable cause and reasonable grounds to believe that:

(1) The child is not amenable to treatment or rehabilitation as a delinquent child through available facilities; and

(2) The child is not commitable to·an institution for mentally deficient, mentally defective or mentally ill persons; and

(3) The safety or interest of the public requires that the child be transferred for criminal prosecution.

(c) Upon such transfer the juvenile court shall state the reasons therefor by minute entry or written order and the child shall thereupon be transferred to the custody of an appropriate law enforcement officer, released on bail, if the offense is bailable, or released upon his own recognizance.

(d) If the action is not transferred, the judge shall proceed to hear and dispose of the action or assign the hearing to another judge, court commissioner or referee.

3. The transcript of the transfer hearing reveals the fact that Gilbert could not be given any significant rehabilitation within a six-week period:

[Cross-examination of probation officer by Mrs. Houseworth]

Q Now this boy is going to be eighteen when?

A February the 4th, 1982.

Q So your recommendation would be that this boy be committed to the State Department of Corrections until that time?

A That is correct.

Q And what do you think the State Department of Corrections could do in that amount of time?

A I believe they would offer further counseling on an individual basis during his stay there.

Their diagnostic sessions are for the six weeks and they would offer further encouragement for Gilbert to structure his behavior in light of occupational and vocational goals.

Q Isn't it true that it takes that amount of time to just complete the diagnostic?

A That is correct, but during diagnostic there is also group orientation and counseling going on.

Q But there could be no specific treatment for this amount of time?

A There will not be long treatment. There will be short treatment diagnostic treatment.

*in a bind whether he wants to move towards a more responsible social pattern versus more antisocial acting out.*

(Emphasis added.) The report indicates the need for continuing supervision of Gilbert as an adult is present. Yet, the report indicates that Gilbert's mother is "quite lax" in her discipline style and, therefore, Gilbert "does about what he wants to do within the family situation." Thus, it is unlikely that Gilbert will get necessary disciplinary guidance from his home environment.

The probation officer's report raises a question of whether Gilbert will independently seek the counseling he needs after he reaches the age of 18.

The minor began being supervised by the field on 4–20–81 and was placed on probation on 7–29–81. When attempts were made to contact Gilbert in his home he was always available, but when Gilbert was assigned to come to community offices, he did not attend those appointments. The probation officer at that time, Joyce Lew, indicated that "Gilbert's cooperation with the probation department has been minimal when the responsibility is left to him."

It appears that Gilbert has some good ideas for the direction he needs to take but has lacked consistent motivation and structure to break out of the drifting situation he has been in and use his very strong intellectual abilities and good personality strengths to direct himself in more constructive behavior and career orientations. When placed in a situation such as detention, the minor is able to function very well and direct his behavior toward achievement of goals. When left on his own within the home situation, he appears to do as he pleases and drifts into problematic situations which end up in police complaints.

. . . .

If he continues to drift and associate with companions involved in serious offenses, then he will be a constant problem for the courts of the state.

While the probation officer believed Gilbert to be amenable to treatment, his report concluded that such treatment could not be offered before Gilbert turned 18.

The most generally accepted goal of the juvenile system is rehabilitation. Our Supreme Court has stated that:

[T]he purpose of the Arizona juvenile law is not to attempt to establish an arbitrary age below which the child is presumed to be ignorant of the consequences of his acts, but rather to provide a special method of treatment for minors under the age of eighteen who have violated the criminal law, and, even with such children, leaving the application of the juvenile or criminal code to the discretion of the trial court.

*McBeth v. Rose,* 111 Ariz. at 402, 531 P.2d at 159 (quoting *Burrows v. State,* 38 Ariz. 99, 111, 297 P. 1029, 1034 (1931)). With this in mind, it becomes clear that a juvenile has no right to avoid adult prosecution solely because he is less than 18 years of age. The important determinate is whether a juvenile is amenable to the special treatment opportunities of the juvenile system.

We have reviewed the facts of this case in light of the goals sought to be achieved by the alternative of retaining him in the juvenile court system. We see no abuse of discretion in the trial court's finding that there was no real possibility for treating Gilbert in a juvenile setting. It was reasonable for the trial court to conclude that no meaningful results could be accomplished with the limited facilities available to juvenile authorities given the limited time frame of juvenile court jurisdiction.

In reaching our decision we are cognizant of the fact that the staff psychologist assigned to evaluate Gilbert recommended against the transfer. We are also aware that the probation officer changed his recommendation at the waiver hearing in favor of retaining juvenile court jurisdiction. However, the juvenile court is not bound by these recommendations any more than a trial judge is bound by the recommendation of the probation officer in a criminal proceeding in superior court. *In*

the Matter of the Appeal in Pima County Juvenile Action No. 53358–6, 126 Ariz. 417, 616 P.2d 92 (App.1980). This court has stated that:

> [T]he court in order to adequately inform itself as to all aspects of the behavioral sciences as they specifically apply to a juvenile, should consider and be receptive to experts in this field. However, when we consider the nature of this testimony—the attempt to predict human behavior in a particular individual over a definite period of time—the juvenile court should not be limited solely to such opinion evidence. Rather, the juvenile judge should also properly consider the particular juvenile's track record in the past and his amenability to the juvenile processes that this record discloses.

In re Maricopa County, Juvenile Action No. J–72804, 18 Ariz.App. 560, 563, 504 P.2d 501, 504 (1972). When considered in this light, and considering the quoted passages of both reports, we cannot say that there was insufficient evidence to support the juvenile court's contrary finding.

Gilbert urges this court to hold that a juvenile court's transfer decision must be supported by clear and convincing evidence. He relies on the recent case of Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), where the United States Supreme Court found that a standard of "fair preponderance of the evidence" in a parental severance case is a denial of due process.

In Santosky, the fundamental liberty interest of natural parents regarding the care, custody, and management of their children required a heightened evidentiary standard in terminating parental rights. We know of no case which holds that a juvenile has a corresponding liberty interest in being tried as a juvenile.

■ Transfer proceedings often require a juvenile court judge to evaluate medical, psychiatric, and other evidence and to decide issues which do not lend themselves to easy determination, especially when required to do so under so strict a standard. This is not to say that this court treats the transfer process lightly, but rather that in this, of all areas, substantial weight must be given to the good faith judgment of the juvenile court that the procedures it has adopted assure fair consideration of all the factors enumerated in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). Our supreme court recognized this when it adopted rule 14(b). That rule only requires "reasonable grounds" to support the juvenile court's transfer decision. It is our opinion that Santosky does not require that a transfer decision be supported by clear and convincing evidence.

Good faith adherence to Arizona's waiver requirements will result in a transfer only in appropriate cases. The requirements are flexible enough to allow for a balancing of a wide range of factors. At the same time, however, they are narrow enough to preclude transfer in cases where neither the interests of the juvenile nor society will be served. We find that a clear and convincing standard of proof is contrary to the express language of rule 14, and that such a standard, if imposed, would seriously erode the juvenile court's authority in waiving its jurisdiction and transferring juveniles for prosecution as adults.

During oral argument, counsel for Gilbert limited his challenge to the court's finding that Gilbert was not "amenable to treatment or rehabilitation as a delinquent child through available facilities." We have already found this finding to be supported by reasonable grounds, and, thus, not in error.

We have also reviewed the facts of this case in light of the juvenile court's other findings, and conclude that they were supported by the evidence as well.

There are reasonable grounds to support the juvenile court's finding that the safety and interest of the public was considered in deciding to transfer Gilbert. He was on probation by the juvenile court when he was charged with aggravated robbery, giving rise to the transfer order. The offense leading to the transfer hearing was serious, was committed in an aggressive and violent

manner, and was perpetrated against a person, resulting in injury. Prior to this charge, Gilbert had been referred to the juvenile court center for two other offenses. The psychologist's report states that Gilbert is not mentally deficient or defective, and does not need to be placed in an institution that serves the mentally ill or mentally retarded.

█ Finally, on oral argument, the State raised a question as to whether this appeal is moot because Gilbert is now 18. The jurisdiction of the juvenile court and the Department of Corrections under a juvenile commitment terminates when a person reaches 18 years of age. *In the Matter of Appeal in Maricopa County Juvenile No. J–86509, supra.*

In *State v. Seeley,* 133 Ariz. ——, —— P.2d —— (1 CA–CIV 6240, filed September 21, 1982) this court stated that the doctrine of dismissal for mootness is subject to two important considerations: (1) If the issue is one of great public concern, or (2) if the issue is one which is capable of being repeated, but because of time restraints would normally evade review, the court in its discretion may deal with the substantive issue presented. *Wise v. First National Bank of Nogales,* 49 Ariz. 146, 65 P.2d 1154 (1937); *Odle v. Imperial Ice Cream Co.,* 11 Ariz.App. 203, 463 P.2d 98 (1970).

█ In our opinion, this case meets both criteria for reaching the substantive issue presented. The transfer of a juvenile for adult prosecution is certainly of great public concern. When a transfer decision is predicated on the fact that a juvenile is fast approaching the age of 18, and the juvenile will in fact reach that age by the time the appeal is heard, any substantive issues raised by the transfer process will evade review unless the court exercises its discretion to hear the appeal.

The transfer order of the juvenile court is affirmed.

OGG, P.J., concurs.

KLEINSCHMIDT, Judge, dissenting:

I dissent because I believe that due process of law requires that transfer of a child from juvenile to adult court must be made upon an evidentiary standard of clear and convincing evidence as opposed to a mere preponderance of the evidence.

The decision to transfer a juvenile to the adult court is a critical one. *Kent v. U.S.,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). To my mind it is no less important than a proceeding to terminate parental rights, which calls for a high degree of confidence in the correctness of the factual conclusions which support it. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). I would apply the three part test of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) appropriate to this consideration as follows:

1. The private interest affected, the child's presumed right to treatment within the juvenile system, is commanding.

2. The risk of error from using a preponderance standard is substantial. This case is a perfect illustration of the point. Even by a mere preponderance standard the trial judge's determination was necessarily very close, if indeed not an abuse of discretion.[4]

3. The state's countervailing interest is slight. The state has chosen to presume that children will be treated within the juvenile system and it has thereby conceded

---

4. I am aware that the victim was kicked in the back by one of his assailants and suffered what he described as a few gashes in his back which were apparently injuries of a temporary nature. It is not at all clear from the record that the defendant was the kicker and there is good reason, based on the victim's testimony, to believe that he was not. It is clear that the defendant is the boy who actually took the victim's radio. I condone nothing when I observe that as robberies go this was less serious than many. The defendant's prior referrals, both of which occurred in 1981, were for painting graffiti on a parking lot and for a theft of beer. The proximity of the defendant's eighteenth birthday is certainly the most serious impediment to his retention in the juvenile system but given the boy's intelligence and potential and the recommendations of the professional staff for retention, I simply repeat that the question was close, even by the most relaxed standard.

the important need to be factually correct in making exceptions to the norm. While the state may indeed have a very strong interest in determining which child shall be treated as a juvenile and which shall be treated as an adult, it can have little interest in having the determination made by the more casual standard.

The very fact that the trial judge's discretion is so broad, and the factual criteria for transfer so vague, bolsters the need for an enhanced standard of proof. *See In re Revocation of License of Irwin Jacob Polk, M.D.,* 90 N.J. 550, 449 A.2d 7 (1982).

The Institute of Judicial Administration and the American Bar Association's Joint Commission on Juvenile Justice Standards have adopted the clear and convincing test for referral of juveniles for adult prosecution. *See* B. Flicker, *Standards for Juvenile Justice: A Summary and Analysis,* § 5.4.2 (1977).

I would reverse. It is clear that the trial judge made his decision on the basis of probable cause and reasonable grounds to believe as dictated by 17A, A.R.S. Juv.Ct. Rules of Proc., Rule 14(b). The record will not support a transfer measured by a clear and convincing standard.