837 P.2d 187

**In the Matter of the Appeal in MARICOPA COUNTY JUVENILE ACTION NO. JV–125409.**

**No. 1 CA–JV 92–0003.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 10, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Richard M. Romley, Maricopa County Atty. by C.O. Lamp, Deputy County Atty., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Susan Bliss, Deputy Public Defender, Phoenix, for appellant.

## OPINION

GARBARINO, Judge.

The state filed a delinquency petition on July 30, 1991, alleging that on or about July 19, 1991, the juvenile committed the crimes of count I, shoplifting; count II, possession of alcohol, in violation of Ariz. Rev.Stat.Ann. ("A.R.S.") sections 13–1805, –1801, –707, –802, 4–244, 8–201, and 8–241; and count III, curfew, in violation of Peoria City Ordinance, Section 5–1–11. On October 8, 1991, the juvenile entered an admission to the allegation of attempted shoplifting. The remaining counts were dismissed.

On November 13, 1991, a disposition hearing was held. At the hearing the judge considered the disposition report prepared by the probation officer. The report stated that the juvenile was 17 years and 5 months of age, that he was not residing with his parents, that he had dropped out of high school in the 12th grade, that he was working full time at Smith's Food Store, and that he had been involved extensively with drugs.

At the conclusion of the hearing, the court ordered that the juvenile be made a ward of the court, and that he be placed on probation under the protective supervision of a juvenile probation officer and in the physical custody of his parents. The court further ordered that he pay a probation services fee of $20 per month until released from probation. The juvenile appeals, challenging the imposition of the probation services fee.

We affirm the orders of the trial court. We emphasize that the purpose of assessing a juvenile a fine is to modify a child's behavior, deter future offenses, rehabilitate, and teach a child responsibility for the value of property. Thus, the legislature empowers the juvenile court with broad grants of statutory authority which are necessary to effectuate this purpose. Accordingly, we find that the juvenile court clearly has the discretion to order either the juvenile or the parent to pay a monetary assessment.

## STANDARD OF REVIEW

The disposition of a delinquent juvenile is within the discretion of the juvenile court under A.R.S. section 8–241(A)(2). The juvenile court's disposition will not be disturbed absent a clear abuse of discretion. *In the Matter of Maricopa Cty. Juv. Action No. J–86715*, 122 Ariz. 300, 303, 594 P.2d 554, 557 (App.1979).

## ISSUE

The sole issue raised by the juvenile on appeal is whether the court abused its discretion when it ordered the juvenile to pay a monthly $20 probation services fee.

## DISCUSSION

In order to place the issue on appeal in proper perspective, we believe that it is first necessary to review the legislative history of A.R.S. section 8–241, which is the statutory authority relating to the disposition and commitment of delinquent children. Pertinent sections addressed in this case are sections 8–241(B) and 8–241(C). Prior to 1979, the statute contained no provision by which the juvenile court could order a juvenile to make restitution to a victim or to pay a monetary penalty or assessment. In 1979, A.R.S. section 8–241(C) was added to provide that the court "may" require a delinquent child to pay restitution and/or a monetary penalty if the court determined that it was in aid of rehabilitation. In 1983, this section was amended. The discretionary word "may" was changed to "shall" following the legislative intent to make a monetary assessment or restitution mandatory where ap-

propriate.[1] With the statutory history in mind, we now examine the arguments presented on appeal.

The juvenile's sole argument in support of his submission that the judge erred when he imposed the monthly $20 probation services fee is that A.R.S. section 8–241(B) does not authorize the court to impose such a fee upon the juvenile. It reads in part:

B. [T]he juvenile court shall order the *parent* of a child to pay a fee of not less than thirty dollars per month for the supervision of the child unless, after determining the inability of the parent to pay the fee, the court orders payment of a lesser amount. [Emphasis added.]

The juvenile asserts that the order requiring him to pay this fee is beyond the discretion of the court at a juvenile disposition hearing and a violation of the juvenile's right to due process of law. He further asserts that because the court made no investigation as to the juvenile's ability to pay, the amount ordered against him is a violation of his right to equal protection.

■ We agree with the juvenile's argument that the language of A.R.S. section 8–241(B) does not grant the court the authority to impose fees upon the *juvenile.* However, another provision does confer that authority upon the court. Arizona Revised Statutes Annotated section 8–241(C) reads in part as follows:

The court *shall,* after considering the nature of the offense and the age, physical and mental condition and earning capacity of the child, order the following dispositions for a delinquent child ...:

*2. To pay a reasonable monetary assessment if the court determines that an assessment is in aid of rehabilitation.* [Emphasis added.]

Additionally, A.R.S. section 8–241(E)(1) provides for how the assessment is to be paid. It reads:

The court *shall* require the restitution or monetary assessment imposed under subsection C or D of this section on a youth who is not committed to the department of youth treatment and rehabilitation to be satisfied in one or both of the following forms:

1. *Monetary reimbursement by the youth in a lump sum or installment payments* through the clerk of the superior court for appropriate distribution. [Emphasis added.]

The legislative history of these statutory provisions demonstrate that the legislature replaced the word "may" with "shall" in order to preserve the pre-existing authority of judges to impose a fee and to give the judges discretion to make payment of a fee mandatory where appropriate. We see no impediment under A.R.S. section 8–241 to the court imposing an "assessment" in the form of a probation fee.

■ Although the juvenile court failed to specifically set forth the juvenile's financial status or his ability to pay, it is clear from the record that the court considered this factor when it imposed the probation fee. The judge considered the disposition report at the time of sentencing. In the disposition report, the probation officer stated that the juvenile was residing with his girlfriend at the time of the hearing, and had been living on his own for three months prior to the hearing. The report further stated that the juvenile was currently working at Smith's Food Store on a full time basis earning $4.50 per hour. Finally, the report stated that the juvenile had been involved extensively with drugs.

■ The goal of the juvenile justice system is to rehabilitate the juvenile. *In the Matter of the Appeal of Maricopa Cty. Juv. Action No. J–93117,* 134 Ariz. 105, 109, 654 P.2d 39, 43 (App.1982). We have reviewed the facts of this case in light of this rehabilitative goal. To further this goal of rehabilitation, the court ordered

---

1. This amendment was contained in Laws 1983, ch. 257, section 2, and was part of major revisions of the commitment, disposition, and release provisions relating to juvenile offenders. In Laws 1983, ch. 257, sections 1 and 7, the legislature set out specific findings that the incidence of juvenile crime was a matter of serious concern and the deterrence of crime could best be achieved by instituting strict rules and policies in the juvenile justice system.

that the juvenile attend school or find paid or unpaid work and keep working during probation. The judge also required the juvenile to participate in a drug abuse program. Finally, the court imposed upon the juvenile a probation services fee of $20 per month. The totality of the evidence suggests that the court considered all of these factors as a way to rehabilitate the juvenile. Additionally, the information provided to the court by the probation officer established that the juvenile had the present ability to pay the $20 monthly fee. Since the juvenile lived outside of his parents' home, the judge recognized that assessing the parents for the cost of supervision would have no rehabilitative effect on the juvenile. By imposing these conditions of probation, it appears that the court was attempting to ensure that the juvenile accept responsibility for the consequences of his actions, with the net result of such treatment hopefully being an increased respect for the law. A monthly payment, whether in the form of a fine or an assessment, is a constant reminder of the cost of lawlessness. When considered in this light, we cannot say that there was insufficient evidence to support the juvenile court's order.

## CONCLUSION

We conclude that the fee imposed by the juvenile court was neither improper nor an abuse of discretion. We have searched the record for fundamental error and have found none. Affirmed.

JACOBSON, P.J., and KLEINSCHMIDT, J., concur.